Kenneth J. PHIPPS, Appellant,

v.

N. V. NEDERLANDSCHE AMERIKAAN-SCHE STOOMVART, MAATS, a corporation, also known as Holland-America Line, Appellee.

No. 15857.

United States Court of Appeals
Ninth Circuit.

Aug. 21, 1958.

John F. Conway, Portland, Or., for appellant.

Wood, Matthiessen, Wood & Tatum, Erskine Wood, John R. Brooke, Portland, Or., for appellee.

Before ORR and HAMLIN, Circuit Judges, and BOWEN, District Judge.

ORR, Circuit Judge.

At Portland, Oregon, on June 11, 1954, appellant Phipps was working as a hold man in a longshore gang in the employ of W. J. Jones & Son, Inc., who was loading the vessel under contract with appellee. Phipps was working at the bottom of a hold into which timbers of varying lengths up to 40 feet were being lowered. These timbers approximately 3″ x 6″ in size, bound together, by means of a sling, in bundles of 18–20 were being loaded into the hold of the ship. The on-deck-hatch-opening being a twenty foot square, it was necessary to slant at an angle to permit lowering. This slanting was accomplished by fixing a single sling to the load a few feet off center. This was the sole binding or apparatus used to secure the timbers in one bundle. The hold being some 35 to 40 feet in depth, the timbers were touching bottom as they cleared the hatch coaming. At the bottom of the hatch the timbers were placed on rollers and conveyed into the hold proper which was a tunnel running from the shaft entrance to the space in which the timbers were stored. While Phipps was in the process of storing a prior load and working some 6 feet from the shaft proper a new load was being lowered. A timber from the load slipped from its binder and struck Phipps in the foot inflicting serious injury.

The record discloses that it was customary in the loading operation for the foreman of the gang at the time the timbers were introduced into the hatch for lowering to warn those at the bottom by saying "heads up". Such a warning was given prior to the time of the lowering of the load from which the timber slipped. The appellant had some 40 feet of tunnel hold into which he could have retreated after receiving the warning.

■ It does not appear that the fall of the lumber was the result of imperfections in the ship's equipment or its appurtenances; the loading operation continued after the accident in the same manner with the same equipment and without any repair thereto. The issues of negligence and unseaworthiness[1] as alleged by appellant boil down to a determination of whether the ship was unseaworthy or that the owner was negligent, or both, by reason of the fact that the owner directed and permitted the timber to be lowered into the particular hold that was used in that it created an unsafe place to work. At the close of all the evidence the trial court directed a verdict in favor of appellee on the theory that the evidence established without contradiction that the ship was seaworthy and that the owner was not negligent.

■■ Because appellant is relying on state cases in relation to the duty of a federal court in directing a verdict, we state the established law in the field. The standard for directing a verdict in a federal court is governed by federal law as it involves questions of the relation of the 7th amendment to a federal trial, and more particularly the function of a federal court in respect of a federal jury. Herron v. Southern Pacific Co., 1931, 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857. The rule of Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, that in diversity cases the proper state law should govern substantive rights in no way affects this rule which relates solely to the internal functioning of a federal court. Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 1958, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed. 2d 953. Furthermore, the substantive law controlling the outcome of this case is also federal law as the action is based on a maritime tort. Pope & Talbot v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143.

■ Although stated in varying ways at different times, the question a trial court must answer in deciding whether to direct a verdict is "whether the evidence in its entirety would rationally support a verdict for the plaintiff, assuming that the jury took, as it would be entitled to take, a view of the evidence most favorable to the plaintiff." Wilkerson v. McCarthy, 1958, 336 U.S. 53, 65, 69 S.Ct. 413, 419, 93 L.Ed. 497. Here the sole issue for decision is "was the appellant provided with a safe place to work" —it matters not whether that question be framed in terms of negligence or unseaworthiness. The shipowner has no burden of an insurer and is not required to provide an accident proof ship. Freitas v. Pacific-Atlantic Steamship Co., 9 Cir., 1955, 218 F.2d 562. See also Titus v. The Santorini, 9 Cir., 1958, 258 F.2d 352. In the absence of unseaworthiness or negligence there is no liability on the owner. Cookingham v. U. S., 9 Cir., 1950, 184 F.2d 213. And if the only negligence is that of the longshoreman or longshore company the owner is not to be held. Freitas v. Pacific-Atlantic Steamship Co., supra; Titus v. The S.S. Santorini, supra.

In this case it is not contended that any part of the ship's equipment or of equipment brought aboard by the stevedore company [see Petterson v. Alaska S.S. Co., 9 Cir., 1953, 205 F.2d 478, affirmed per curiam, 1954, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798] was defective in any manner. Nor can it be said that from the very nature of the accident a defect in the gear can be inferred as was the situation in the Petterson case.

---

1. The owner's liability for unseaworthiness of his vessel has been extended to cover injuries to longshoremen. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. See also Pope & Talbot, Inc., v. Cordray, 9 Cir., 1958, 258 F.2d 214; Titus v. The Santorini, 9 Cir., 1958, 258 F.2d 352.

It was also stipulated below that the Pacific Coast Code of Maritime Safety § 11, r. 201 is applicable, which reads in its pertinent part: "The owners and/or operators of vessels shall provide safe ship's gear and equipment and a safe working place for all stevedoring operations on board ship."

■ It is argued that the shipowner created an unsafe place to work when he directed and permitted a cargo of the type here involved to be lowered with usual and sound equipment and appurtenances into a hold of a size of that used. In that respect the uncontradicted evidence is that it was a usual operation done in the usual manner—that loads too long to be lowered into a hold on the horizontal are as a matter of practice and necessity lowered by tipping in the manner here done, and that it is frequent and customary to lower loads through hatch openings too short for horizontal clearance. While it is true that an operation may be unreasonable in the light of all the circumstances and thus negligent even though customary, there is no such situation shown here. The hold used was as seaworthy as any available and ordinarily used, hence the only alternative left to the shipowner was not to take the load at all. The trial court was correct in deciding that a reasonable jury could not have found a want of care in designating that hold, or a want of seaworthiness where there was no structural defect, without resorting to bare conjecture.

■ Appellant complains of the trial court's action in excluding proffered evidence that other holds were available on the ship through which the lumber could have been lowered horizontally with a binder at each end making it less likely that a slipout could occur. It appears from the record that the largest of the holds on the ship was 36 feet in length and 20 feet in width.[2] It is mathematically demonstrable that the diagonal of this hold is 41 feet. Hence the loads containing boards up to 40 feet in length and comprising a bundle of a few feet in width could not have been lowered horizontally on the diagonal as the girth would cause it to overlap the edge. Thus upon its face the proffered evidence was incompetent to support the theory for which it was offered.

And again the court in rejecting the evidence had a right to consider whether it was "of too little value in comparison with the prejudice it would create, the surprise it would cause, or the confusing ancillary issues it would raise. * * *" Doucette v. Vincent, 1 Cir., 1952, 194 F. 2d 834, 838. Present here could be such collateral and ancillary issues as:

1. Whether the lumber loaded in the longer hatch would affect the trim of the ship.

2. Was there room at the time in the larger hatch for this additional lumber?

3. Would the cargo in the larger hatch have been affected either from the taint of the green lumber or the weight of the lumber superimposed on other cargo.

4. Whether loading of this particular lumber through the larger hatches could have been done at all because of the necessity in all shipping operations of loading cargo so that it may be conveniently reached for discharge at the port of call for which it is destined.

Unseaworthiness cannot be extended to the point of holding the owner liable in a case where he contracted for the loading of a customary cargo in a customary way, no failure of the ship's gear being shown and no showing that what was customary was not reasonable, but simply and solely on the basis that an accident occurred.

Affirmed.

---

2. The size of the holds were: No. 1. 20 x 24
No. 2. 20 x 36
No. 3. 20 x 20
No. 4 16 x 20
No. 5. 20 x 36
No. 6. 20 x 30