**William MORRELL and Evaristo Valle,** Appellants,

v.

**UNITED STATES of America,** Appellee,

and

**Triple "A" Machine Shop, Inc.,** Appellee-Impleaded.

No. 17321.

United States Court of Appeals Ninth Circuit.

Dec. 26, 1961.

Rehearing Denied Jan. 29, 1962.

See also 290 F.2d 208.

Jay A. Darwin and Irwin Leff, San Francisco, Cal., for appellant.

Wm. H. Orrick, Jr., Asst. Atty. Gen., and Cecil F. Poole, U. S. Atty., San Francisco, Cal., Keith R. Ferguson, Sp. Asst. to the Atty. Gen., and R. H. Nicholson, Sp. Atty., Admiralty and Shipping Section, Dept. of Justice, San Francisco, Cal., for appellee United States.

Before BARNES, HAMLIN and JERTBERG, Circuit Judges.

PER CURIAM.

The court below (Morrell v. United States, N.D.Cal.1960, 193 F.Supp. 705), following Lawlor v. Socony-Vacuum Oil Co., 2 Cir., 1960, 275 F.2d 599, cert. denied 363 U.S. 844, 80 S.Ct. 1614, 4 L. Ed.2d 1728, and other cases cited in its opinion, ruled that libellants, as shoreside repairmen, were entitled to a warranty of seaworthiness. We need not, and do not, reach that point. This because the court below held the United States was not liable on the theory of unseaworthiness,[1] nor under the theory of negligence. We hold there were sufficient facts to justify each of those holdings. And see the almost identical facts in Manhat v. United States, 2 Cir. 1955, 220 F.2d 143, where a similar ruling was made.

Admitting that a finding of seaworthiness is ordinarily a question of fact (Mahnich v. Southern S.S. Co., 1944, 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561), which this court cannot disturb except in case of clear error, appellants urge two errors of law: (1) that it is not enough for a shipowner to make *available* all devices required to make the vessel seaworthy, but has the further duty to see that shoreside repairmen do not disregard their use, or fail to make use of them; (2) that a seaworthy lifeboat may be made instantaneously unseaworthy by the improper use of a seaworthy safety device by a fellow worker.

1. Especially pertinent are the following findings:

"The boat was equipped with Rottmer safety release gear which was designed to hold the boat in the position and the condition in which the boat was at the time Libelants were assigned to work in it and which was in good working order and operating properly." (Finding V.)

"The Court found at the conclusion of the evidence that all of the gear of the vessel with respect to Lifeboat No. 2 was in good working order, and fit for the purpose intended. * * *" (Memo for Judgment, Appellee's Br.Appx. iv.)

"Respondent at all material times, supplied a safe place in which to work by supplying all necessary safety gear and appliances in good working order." (Finding X.)

"The USNS David C. Shanks was at all material times and in all material respects seaworthy in that all of her appliances and gear were reasonably fit for the purpose for which they were being used." (Finding IX.)

"Libelants have failed to prove the material allegations contained in the Libels." (Finding XIII and Conclusion IV.)

We refer to the opinion below for an exposition of the manner in which the accident occurred when Lifeboat No. 2 fell. The work was being done under a contract with the government which was in evidence. That contract had not expired. The vessel was still in the custody of the contractor for the purpose of making repairs, and that work was going on. Because the contract was almost completed, the officers and crew were aboard the vessel, but were not present when the accident occurred. In truth, not only was there no requirement in the contract for supervision of any work by the government, but it-had no right to supervise any work. As the trial court found, the ship "supplied a safe place in which to work * * *. The work was under the control of [the contractor] * * *. Nothing the ship * * * did nor anything the ship * * * did not do, contributed to the falling of Lifeboat No. 2."

■ As to the theory of instantaneous unseaworthiness, we understand appellants to urge that a safe place to work in a perfectly seaworthy vessel, properly equipped with all safety devices (including a specific warning sign *not* to turn the lever which *was* turned by a fellow employee), became suddenly "instantaneously" unseaworthy when that lever was turned, and the boat started to fall; and that such alleged unseaworthiness, and not the turning of the lever, was the proximate cause of the accident. We reject any such alleged distinction as to proximate cause.

■ The owner's duty to provide a seaworthy vessel is absolute. Mitchell v. Trawler Racer, Inc., 1960, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941. But this "is not to suggest that the owner is obligated to furnish an accident-free ship. * * * [I]t is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness * * * a vessel reasonably suitable for her intended service." Mitchell v. Trawler Racer, Inc., supra at 550, 80 S.Ct. at 933. And see Titus v. The Santorini, 9 Cir. 1958, 258 F.2d 352, 355; and Phipps v. N. V.

Nederlandsche Amerikaansche S.M., 9 Cir. 1958, 259 F.2d 143. The owner, the United States of America, provided that reasonable fitness here.

Affirmed.