Chester SEITZ, Libelant,

v.

M.V. THE CAPTANTONIS, her engines, tackle and gear, and any and all persons claiming any interest therein, and Cia. Nav. Krina, S.A. Panama, Respondents.

COMPANIA NAVIERA KRINA, S. A., of Panama, Claimant,

v.

W. J. JONES & SON, INC., a corporation, Third-Party Respondent.

Civ. No. 60–426.

United States District Court
D. Oregon.

Feb. 27, 1962.

Pozzi, Levin & Wilson, Portland, Or., for libelant.

Wood, Wood, Tatum, Mosser & Brooke, Portland, Or., for respondent.

Krause, Lindsay & Nahstoll, Portland, Or., for third party respondent.

KILKENNY, District Judge.

Libelant, a longshoreman employed by a master stevedore, herein called Jones, received personal injuries in an accident while performing services for the stevedore aboard the vessel M. V. CAPTANTONIS. The vessel was berthed at Swan Island, Portland, Oregon, on navigable waters of the United States, the services being performed by the stevedore pursuant to contract with the respondent, the owner and claimant of the vessel.

The facts are not seriously in dispute. At the time of the accident the longshoremen in the employ of Jones were rigging the vessel preparatory to the stowage of a bulk cargo of grain. In lining the vessel, it was necessary to erect a center bulkhead running fore and aft in the particular hold, the bulkhead to be secured by cables running athwartship from the bulkhead to a rib on the skin of the ship, the cable to be rigged on the rib by an eye bolt which could be screwed in and out of a turnbuckle. The eye bolt in the turnbuckle did not remain in a fixed position during the operations by the stevedore but had to be adjusted in order to properly taut the cable and secure the bulkhead. It was a practice to first secure the bulkhead end of the cable, which was quite heavy, and then, with the assistance of a handy-billy, attach the eye bolt to the shackle on the rib. Libelant assisted in hoisting the turnbuckle to which the cable was attached into position so that the eye of the eye bolt on the turnbuckle could be connected with said shackle. The cable and all attachments were part of the equipment of the ship. The cable in question was delivered by the crew of the vessel to the stevedore gang on the main deck and was lowered by the gang into the hold where the accident occurred. When libelant and his partner returned from a coffee break, other members of the gang had attached one end of the cable to the centerline bulkhead and had stretched out the remainder of the cable and turnbuckle on the lower deck of the hold and informed libelant it was ready to rig. Libelant then used a ladder which was resting against the skin to secure the handy-billy and he and his partner then raised the cable and turnbuckle into position and attached the eye bolt of the turnbuckle to the shackle on the rib. After making such attachments, libelant removed the handy-billy, handed it to his partner when halfway down the ladder and then went back up the ladder to the turnbuckle for the specific purpose of adjusting the buckle in order to tighten the cable and thus properly secure the bulkhead. Libelant testified he could not tell which way to turn the barrel of the bulkhead in order to make the cable taut. There is some dispute as to whether he turned the barrel with his hands or with a wrench. The method of turning, in my opinion, is of no significance. During the course of experimenting with the barrel on the proper way to turn, the eye bolt on the rib side became unscrewed and separated from the barrel. As a consequence, the heavy cable and the remainder of the turnbuckle fell to the deck and pulled libelant from the ladder to his injury.

Libelant testified at the trial that he turned the barrel only one-half turn before it separated from the screw. An examination of the barrel and the screw reveals that there was no thread failure.

indicating a "clean" separation. In his deposition libelant indicated he might have turned the barrel a greater distance. It may safely be said that the cable at the time of the accident was "hanging by a thread or threads" and that the cable, turnbuckle and screw were delivered by the crew of the ship to the gang in that condition.

Libelant's only charge of unseaworthiness is that the turnbuckle was not properly connected. The charges of negligence grow out of the same claim.

During the course of the trial the issue on unseaworthiness was narrowed to whether the turnbuckle on the cable was properly connected. That particular issue is now narrowed in argument to whether the fact that the eye bolt was attached to the barrel of the turnbuckle by only a thread rendered this particular gear unseaworthy. It is clear that the eye bolt was in the same position in the barrel of the turnbuckle at the time the eye was shackled to the rib as it was when libelant and his partner returned from the coffee break. There is no evidence of a defect in, or malfunctioning of, the eye bolt or any other part of the turnbuckle. As a matter of fact, all the evidence on the subject indicates there was nothing unusual or defective about the condition, construction or working mechanism of this gear.

■ The obligation of the shipowner to provide a seaworthy vessel, originally to the credit of seamen only, has been extended to shore-side workers rendering to the vessel those services which were historically the work of the crew. Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. Therefore, in this case, the warranty of seaworthiness would run in favor of libelant. The obligation of seaworthiness is peculiarly and exclusively the obligation of the owner. It is one he cannot delegate. Seas Shipping Co. v. Sieracki, supra. A precise definition of "seaworthiness" to fit every purpose has baffled the minds of our most able, experienced and resourceful judges. I suppose the definition must remain quite nebulous in order that it be sufficiently pliable to fit the different contexts in which it is used. That the duty is absolute and is a species of liability without fault is now settled beyond question. Seas Shipping Co. v. Sieracki, supra. It is a form of absolute duty owing to all within range of its humanitarian policy and is shaped to meet the hazards which performing the service imposes. The liability is neither limited by concepts of negligence nor by those which may be contractual in character. THE H. A. SCANDRETT, 2 Cir., 1937, 87 F.2d 708; Mahnich v. Southern S. S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561. The duty to furnish a seaworthy ship is absolute and entirely separate and independent of the shipowner's duty to exercise reasonable care under the Jones Act, 46 U.S.C.A. § 688. Pope & Talbot, Inc. v. Hawn, supra; Alaska S. S. Co. v. Petterson, 346 U.S. 914, 74 S.Ct. 272, 98 L.Ed. 410; Crumady v. THE J. H. FISSER, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413.

■ ■ However, the duty does not require the owner to furnish a ship or gear beyond one which is reasonably fit for the use intended. The standard is not an accident-free ship nor to provide a ship or gear which might withstand all conceivable onslaughts. In the last analysis, the duty to furnish a seaworthy ship and gear, although absolute, means nothing more or less than a duty to furnish a ship and equipment reasonably suitable for the intended service or use. Boudoin v. Lykes Bros. S. S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354; Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941. The duty to furnish seaworthy appliances and equipment is the same as the duty to furnish a seaworthy ship. Cox v. Esso Shipping Co., 5 Cir., 1957, 247 F.2d 629; Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 81 S.Ct. 6, 5 L.Ed.2d 20. In other words, the duty is absolute, but the appliance need only be reasonably fit and suitable for the intended use.

What was the intended use of the turn-buckle, consisting of the barrel and eye bolt? Clearly, this equipment had no use whatsoever if it was not to be used for the purpose of tauting the cable and thus securing the bulkhead. The evidence, and for that matter common sense, teaches that there must be some slack in such a cable in order to make the initial attachment to the shackle. This slack must necessarily come from either unscrewing the eye bolt or turning the barrel of the turnbuckle. Each accomplishes the same purpose. Conversely, the slack must be taken out of the cable by turning the barrel of the turnbuckle in the opposite direction. After the eye bolt was shackled to the rib of the ship, it was in a fixed position, could not be turned, and the sole method of making the cable taut was by turning the barrel of the turnbuckle in the right direction. If turned in the wrong direction, additional slack would be placed in the cable. It was libelant's duty, under the uncontradicted evidence, to secure enough slack to shackle the turnbuckle to the rib of the ship and to assist in hoisting the cable and turnbuckle so that they could be properly shackled. Libelant, of his own volition, commenced experimenting with the turnbuckle to determine the proper way to turn the barrel so as to tighten the cable and in the course of this experiment turned the barrel in the wrong direction causing it to separate from the eye bolt and fall to the deck, carrying libelant with it.

■ It seems to me that the cable and all of its attachments, including the turnbuckle, were reasonably fit for the intended use while lying on the deck. There is no claim that there was anything wrong with the cable and there is no claim that there was anything wrong with the turnbuckle except that it was not properly connected. It was connected in the only manner which its design permitted. What libelant really means is that the turnbuckle was not reasonably fit because the eye bolt engaged only one or two threads in the barrel. With commendable candor, libelant concedes that the turnbuckle was not inherently defective. He urges that an otherwise fit and suitable turnbuckle was made unseaworthy by the ship permitting the barrel to "hang by a thread" on the eye bolt. But that very hazard, if it was a hazard, was part of the turnbuckle design. The eye bolt might be engaged by one or any other number of threads, or it might be entirely disengaged. There is no claim that the turnbuckle should have been designed so that the eye bolt could not be unscrewed from the barrel. Of course, such a design would probably destroy the utility of the turnbuckle and thus prevent the performance of the very function for which the article was designed. I find from the facts in the case, and the inferences to be drawn therefrom, that the ship's equipment, consisting of the cable and turnbuckle, at the time of the delivery to the gang and at the time libelant took charge of placing this gear in proper position, was seaworthy and that the owner-respondent was not negligent in any of the particulars as charged.

■ Libelant called certain witnesses to testify as to the general custom or practice with reference to the condition of the cable, turnbuckle and eye bolt on delivery by the crew of the ship to the gang. Accepting, *arguendo*, the truth of all statements made by these witnesses, the fact remains that said persons did not qualify as experts on the subject and their opinions are of little, if any, value to the court. These statements or opinions, at most, were evidence which could be used by the court, with the other evidence in the case, in passing on the question of negligence. Robertson v. Coca-Cola Bottling Co., 195 Or. 668, 247 P.2d 217; Brigham Young University v. Lillywhite, 10 Cir., 1941, 118 F.2d 836, 137 A.L.R. 598. In any event, there is no evidence that the ship had notice of the alleged custom or practice and under such circumstances there could be no liability for negligence. Miller v. THE SULTANA, 2 Cir., 1949, 176 F.2d 203;

Holub v. Sword S. S. Line, 5 Cir., 1942, 132 F.2d 206; Vanderlinden v. Lorentzen, 2 Cir., 1944, 139 F.2d 995.

It is suggested that even though the gear was seaworthy at the time it was delivered to the gang and at the time libelant took charge, it became unseaworthy when libelant and his partner hoisted the same into position and shackled the cable "while hanging by a thread" to the rib of the ship. It was the act of libelant in turning the barrel in the wrong direction which caused the separation and his resulting injuries. The large expanse of exposed thread outside of the barrel which libelant failed to observe could have been observed by a reasonable prudent person. To conduct an experiment on which way to turn the barrel under such circumstances constituted negligence of a high degree. I find that such actions on the part of libelant were the proximate cause of his fall and resulting injuries. The shipowner's warranty of seaworthiness does not encompass the negligent use by a longshoreman of seaworthy appliances. Titus v. THE SANTORINI, 9 Cir., 1958, 258 F.2d 352; Royal Mail Lines, Ltd. v. Peck, 9 Cir., 1959, 269 F.2d 857; Billeci v. United States, 9 Cir., January 18, 1962, 298 F.2d 703; Donovan v. Esso Shipping Co., 3 Cir., 1958, 259 F.2d 65, cert. den. 359 U.S. 907, 79 S.Ct. 583, 3 L.Ed.2d 572; Williams v. THE S. S. RICHARD DE LARRINAGA, 4 Cir., 1961, 287 F.2d 732.

The Supreme Court has been sharply divided on decisions in admiralty and Jones Act cases, the facts in which bear some resemblance to those here involved. Alaska S. S. Co. v. Petterson, supra; Crumady v. THE J. H. FISSER, supra; Mitchell v. Trawler Racer, Inc., supra; Michalic v. Cleveland Tankers, Inc., supra. The science of judicial decision, in this area, is highly unpredictable and what may happen on the next round is not to be forecast with any degree of probability. My best guess is that the Ninth Circuit will not permit a recovery on these facts. Billeci v. United States, supra.

At the close of the testimony I expressed an opinion that the decision of the Supreme Court in Michalic might control. On closer examination, I find that the wrench involved in Michalic presented a legal problem quite distinguishable from the turnbuckle problem before me. If the wrench in Michalic had been adjustable, that decision might have been helpful.

I conclude that libelant has failed to establish either unseaworthiness or negligence and that his voluntary acts, as above mentioned, were the proximate cause of his injuries. This opinion shall stand as my findings and conclusions on the facts and law in question. A decree of dismissal shall be entered in favor of respondents, the claimant and third party respondent. Such decree shall be prepared, served and presented by proctors for those parties.