Nicola MASSA, Plaintiff,

v.

C.A. VENEZUELAN NAVIGACION, Defendant and Third Party Plaintiff,

v.

JOHN W. McGRATH CORPORATION, Third Party Defendant.

Civ. No. 16712.

United States District Court E. D. New York.

Oct. 10, 1962.

Francis J. Nicosia, Brooklyn, N. Y., for plaintiff. Jacob Rassner, New York City, of counsel.

Hill, Betts, Yamaoka, Freehill & Longcope, New York City, for defendant and third party plaintiff. Renato C. Giallorenzi, New York City, of counsel.

Macklin, Speer, Hanan & McKernan, New York City, for third party defendant. Gerald J. McKernan, James M. Leonard, New York City, of counsel.

ZAVATT, Chief Judge.

The plaintiff, a longshoreman in the employ of the third party defendant, McGrath, seeks damages for personal injuries on the ground of the alleged negligence of the defendant, the owner and operator of the SS CIUDAD DE CUMANA, and on the ground that said vessel was unseaworthy. By a pre-trial order, dated December 7, 1960, the plaintiff limited the issues of alleged negligence and unseaworthiness to an alleged defective pallet.

During a previous trial, the trial judge granted the defendant's motion to dis-

miss the complaint and the third party defendant's motion to dismiss the third party complaint after the jury disagreed. On appeal to the Court of Appeals of this Circuit, the judgments of dismissal were reversed and the claims of the plaintiff and the third party plaintiff was remanded for re-trial. Massa v. C. A. Venezuelan Navigacion, 298 F. 2d 239 (2d Cir.1962).

The second trial was tried to the court without a jury on the theory that a proximate cause of plaintiff's personal injuries was a defective pallet, the use of which in the loading of the vessel constituted negligence on the part of the defendant and rendered the defendant's vessel unseaworthy. In view of the findings of fact and conclusions of law herein, it is unnecessary to discuss the claim over of the defendant against the third party defendant.

### Findings of Fact

The court makes the following findings of fact based upon the credible evidence and the court's view of a loading operation during the trial with the knowledge and consent of the parties and their attorneys and in the presence of said attorneys:

1. On February 24, 1955, the SS CIUDAD DE CUMANA, owned, operated, managed and controlled by C. A. Venezuelan Navigacion the defendant and third party plaintiff, was berthed at Pier 10, North River, within the Eastern District of New York, for purposes of taking on cargo.

2. On February 24, 1955, the third party defendant was loading cargo into said vessel pursuant to a stevedoring contract with the defendant and third party plaintiff. The entire loading operation was under the control of the third party defendant.

3. In connection with said loading operations, the third party defendant supplied longshoremen, supervisors, hatch bosses, gangwaymen, hi-lo drivers, gearmen, an assembly known as a "pallet bridle" and wooden cargo handling platforms, known as pallets.

4. The "pallet bridle" consisted of a "spreader", a square or rectangular shape metal frame; four wire lines of equal length, known as "legs", each extending down from a corner of the "spreader"; two bridle bars made of steel and aluminum, each of which had attached to it two metal protuberances known variously as "plugs", "flanges", "prongs" or "tongs" (which will be referred to herein as "tongs"). The wire "legs" were attached to shackles at the respective ends of the bridle bars. The pallet bridle was connected to a winch aboard the vessel by means of a ship's cable.

5. The "pallets" measured approximately 5 feet 6 inches in length by 3 feet 4 inches in width. The top and bottom of each pallet were identical—each consisting of a series of parallel slats. The top and bottom of each pallet were separated by four horizontal wooden "cross pieces". Two "cross pieces" served as interior supports. One was located at each end of the pallet. Each end cross piece had two apertures known as "pallet holes" into which the tongs of the pallet bars are inserted when a pallet loaded with cargo, a draft, was to be lifted from the dock to the ship.

Loaded pallets were brought to the side of the ship by means of a hi-lo owned and operated by the third party defendant and were placed upon a platform which consisted of two pallets superimposed one above the other. This platform was so used for the convenience of the four man gang of longshoremen who were to hook up the pallet bridle to the draft or loaded pallet.

7. The pallet bridle was hooked up to the draft by inserting the two tongs of one pallet bar into the two pallet holes at one end of the pallet and the two tongs of the other pallet bar into the two pallet holes at the other end of the pallet. Each member of the four man gang inserted one tong into one pallet hole. During the hookup operation, therefore, two members of this gang stood at one end of the platform and the

loaded pallet and two members of the gang stood at the other end.

8. At about 11 P.M. on February 24, 1955, a hi-lo owned and operated by the third party defendant placed upon the two-pallet platform a pallet loaded in an even manner with approximately 36 cases of lube oil cans in cartons weighing about one ton.

9. The plaintiff and one, Gambardella, a member of the gang, stood at the aft end of the pallet (with reference to the ship). The two other members of the gang, Di Meo and Marrocolla, stood at the forward end.

10. Di Meo and Marrcolla placed the tongs of one pallet bar into the forward pallet holes of the loaded pallet. The plaintiff and Gambardella placed the tongs of the other pallet bar into the aft pallet holes of the pallet immediately below the loaded pallet.

11. In response to a signal from Di Meo and a gangway man the draft was raised by a winch aboard the ship about 8 feet when some of the cargo spilled from the pallet toward the aft end of the pallet and some of that cargo struck and injured the plaintiff.

12. A few minutes after this accident, the bridle was in a lowered position on top of the said pallet and the pallet, with about a dozen of the cartons still on it, was resting on the platform. The two tongs of the forward pallet bar were fully inserted in the forward pallet holes of the top pallet. The two tongs of the aft pallet bar were partially inserted in the aft end of the pallet immediately below.

13. The top pallet was examined, reloaded with the same cargo; the tongs were properly inserted in the pallet holes at either end by a gang of four longshoremen (not including the plaintiff) and the re-loaded pallet was hoisted into the ship.

14. The pallet bridle and the loaded pallet hooked up thereto and the pallet improperly hooked up were free from all defects; were reasonably fit for their intended use, i. e., were seaworthy in all respects and neither caused nor contributed to the plaintiff's injury.

15. The defendant was not negligent nor was the vessel unseaworthy.

16. The plaintiff's injuries were caused solely by his own negligence and that of a fellow longshoreman. By inserting the pallet bars improperly, as found above, they caused the loaded pallet to be lifted unevenly thus causing the cargo to spill on the side of the pallet where the plaintiff was standing and to strike the plaintiff and cause him bodily injury. The defendant had no knowledge of nor was he chargeable with knowledge of these facts.

 Stevedores, when performing "the ship's service", are entitled to the same protection against unseaworthiness as members of the crew doing the same work.[1] This protection against unseaworthiness imposes upon the owner of the vessel a nondelegable duty to provide a seaworthy vessel (including appliances appurtenant thereto brought on board by the stevedore) and a competent crew.[2] Stevedores themselves may render a ship pro tanto unsea-

---

[1]. This doctrine of seaworthiness, finally settled as to seamen in The Osceola, (1902), 189 U.S. 158, 23 S.Ct. 483, 47 L. Ed. 760 was extended to longshoreman injured aboard ship by Seas Shipping Co. v. Sieracki, (1946) 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, and further extended to longshoremen injured on the docks (under certain circumstances) by Strika v. Netherlands Ministry of Traffic, 185 F. 2d 555 (2d Cir. 1950), cert. denied (1951) 341 U.S. 904, 71 S.Ct. 614, 95 L.Ed. 1343. These extensions of the doctrine were originally based upon the belief that, his-torically, the work of loading and unloading a vessel was the work of the vessel's seamen. Contra, Tetreault, Seamen, Seaworthiness, and the Rights of Harbor Workers, 39 Corn.L.Q. 381 (1954).

[2]. Boudoin v. Lykes Brothers Steamship Co., (1955) 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354; Mahnich v. Southern S.S. Co., (1944) 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561; Alaska Steamship Company v. Petterson, (1954) 347 U.S. 396, 74 S. Ct. 601, 98 L.Ed. 798.

worthy and thereby impose liability upon the owner of the vessel for injuries they sustain.[3] Under appropriate circumstances, recovery may be had by those working on shore.[4] Liability attaches for a temporary as well as a permanent unseaworthy condition. Mitchell v. Trawler Racer, Inc. (1960), 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941. The duty to furnish a seaworthy vessel does not impose a duty to furnish one that is accident free but, rather, to furnish:

> " * * * a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service." Mitchell v. Trawler Racer, Inc., (362 U.S. at 550, 80 S.Ct. at 933).

■■ Since all of the appliances involved in the accident including the pallet, were seaworthy, the plaintiff may not recover. The doctrine of unseaworthiness has not yet been extended to allow recovery for injuries caused by the contemporaneous negligent usage of seaworthy appliances. Billeci v. United States, 298 F.2d 703, 705 (9th Cir.1962); Morrell v. United States, 297 F.2d 662 (9th Cir.1961); Williams v. The SS Richard De Larrinaga, 287 F.2d 732 (4th Cir.1961); Blankenship v. Ellerman's Wilson Line New York, Inc., 265 F.2d 455 (4th Cir.1959); Penedo Cia Naviera S.A. v. Maniatis, 262 F.2d 284 (4th Cir. 1959); Imperial Oil, Ltd. v. Drlik, 234 F.2d 4 (6th Cir.1956); Berti v. Compagnie De Navigation Cyprien Fabre, 213 F.2d 397 (2d Cir.1954); Grillea v. United States, 232 F.2d 919 (2d Cir. 1956).

On cases presenting similar fact situations liability for unseaworthiness has been denied. In Arena v. Luckenbach Steamship Co., 279 F.2d 186 (1st Cir. 1960), the plaintiff, a longshoreman working in the hold, was injured when improper loading caused a loading board to tip, spilling rolls of paper into the hold. The court held that such improper loading by plaintiff's fellow longshoremen did not create a condition of unseaworthiness chargeable to the defendant. In Sullivan v. United States, 203 F.Supp. 496 (S.D.N.Y.1961), the plaintiff a longshoreman working in the hold, was injured when three cartons of frozen beef fell from a pallet and struck him. The court found the accident to have been due to the "transitory or momentary negligence" of the winchmen, employees of the stevedore. The court held: "The fact that the winchmen of the respondent-impleaded were guilty of operational negligence did not render the said vessel unseaworthy nor did such negligence create an unseaworthy condition." 203 F. Supp. at 503. In Harrell v. Lykes Bros. S.S. Co., 165 F.Supp. 125 (E.D.La.1958), the plaintiff, a longshoreman, while working in the 'tweendeck was struck by a hundred pound sack of corn which fell from a pallet brought over the hatch through the use of the vessel's equipment. The court found the accident to be due either to negligent loading of the pallet or negligent manipulation of the draft by the longshoreman operating the winch. The court stated succinctly that: "No court has as yet held that an improperly loaded pallet makes the vessel unseaworthy. This court does not do so now." (165 F.Supp. at 126.) See also Phipps v. N. V. Nederlandsche Amerikaansche S., M., 259 F.2d 143 (9th Cir.1958).

■ There remains to be considered the question of the applicability of the doctrine of instantaneous unseaworthiness, i. e., that, although the ship's equipment was seaworthy, nevertheless in the few seconds that the improperly

---

3. Grillea v. United States, 232 F.2d 919, Rich v. Ellerman & Bucknall S.S. Co., 2 Cir., 278 F.2d 704.

4. See footnote 2/.

fastened draft was being raised, the ship·was unfit and the unfitness during that period caused the injury. The law of unseaworthiness has not yet been so extended. Titus v. The Santorini, 258 F.2d 352, 354 (9th Cir.1958); Grillea v. United States, 232 F.2d 919 (2d Cir. 1956). In Morrell v. United States, supra, the plaintiff was injured when a lifeboat in which he had been working fell from its davits due to the negligence of a fellow employee. The plaintiff contended: "that a seaworthy lifeboat may be made instantaneously unseaworthy by the improper use of a seaworthy safety device by a fellow worker." (9 Cir., 297 F.2d at 663). The court held:

> "As to the theory of instantaneous unseaworthiness, we understand appellants to urge that a safe place to work in a perfectly seaworthy vessel, properly equipped with all safety devices (including a specific warning sign *not* to turn the lever which *was* turned by a fellow employee), became suddenly 'instantaneously' unseaworthy when that lever was turned, and the boat started to fall; and that such alleged unseaworthiness, and not the turning of the lever, was the proximate cause of the accident. We reject any such alleged distinction as to proximate cause." (9 Cir., 297 F. 2d at 664).

To the same effect Seitz v. M.V. The Captantonis, 203 F.Supp. 723 (D.Ore.1962).

### Conclusions of Law

1. The defendant and third party plaintiff was not negligent.

2. The SS CIUDAD DE CUMANA was seaworthy.

3. The plaintiff's injury was caused solely by his own negligence and that of a fellow longshoreman.

4. The complaint and the third party complaint are to be dismissed.

The parties, may, on or before ten days from the date hereof, submit additional proposed findings of fact and conclusions of law consistent herewith.

Settle an order, consistent herewith, on or before fifteen days from the date hereof.