Mose **REED**

v.

**BANK LINES, LTD.**

v.

**STRACHAN SHIPPING COMPANY,**
**Third-Party Defendant.**

No. 5562.

United States District Court
E. D. Louisiana,
New Orleans Division.

Dec. 28, 1966.

Leonard S. Ungar, James A. Wysocki, John R. Martzell, New Orleans, La., for libelant.

Leon Sarpy, J. Dwight LeBlanc, Jr., New Orleans, La., for Bank Lines, Ltd.

Stuart A. McClendon, Metairie, La., for Strachan Shipping.

CHRISTENBERRY, District Judge.

This matter came on for trial before the Court on a former day, and after hearing the evidence and arguments of counsel, and considering the briefs filed by counsel, the Court hereby makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Plaintiff Mose Reed was an experienced longshoreman employed by Strachan Shipping Co. on October 16, 1962, at which time the M/V FOYLEBANK was moored starboard side on the Mississippi River in the harbor of New Orleans at the Harmony Street Wharf.

2. Strachan Shipping Company, an independent master stevedore, had contracted to load various cargoes aboard the M/V FOYLEBANK, which loading operation was under their complete charge and direction.

3. On the occasion in question, Mose Reed was working in hatch No. 6, 'tween deck area, of the M/V FOYLEBANK on the offshore side, with four fellow longshoremen.

4. At about 10:15 A.M. a certain crate of pulpboard or some comparable cargo, weighing approximately 1100 lbs., had been deposited in the square of the hatch. The crate was made up by St. Regis Paper Company in such a manner that it sat with a wooden frame on all four corners on a wooden platform with skids, and the entire unit was then encircled by seven steel bands or straps, which crate was marked with the notation "USE NO HOOKS."

5. Mose Reed and four fellow longshoremen were attempting to move this 1100 pound crate unit a distance of about eight to ten feet to the offshore side, without any fork lift machine, jacks or crowbars, and only with hand hooks used by longshoremen. Mose Reed was the only longshoreman who had his hand hook into one of the steel bands around the package. Mose Reed and John Perkins, one of the longshoremen, were in the front of the crate and John Perkins had his hand hook in the wood corners. Mose Reed had one of the wood corners available in which he could have used his hook. None of the other longshoremen attempting to move the crate had his hand hook in the steel straps. On previous occasions the longshoremen had observed such steel bands break when they were pulled on by hand hooks, not an unusual occurrence along the river front.

6. Mose Reed had his two hands on his hand hook, and pulled with all his might on the steel band, and it parted. Plaintiff had his feet improperly placed and he felt backwards, as a result of which plaintiff contends that he was injured.

7. After the accident no one looked at the band, nor could any witness tell what happened to the broken band. The hand hook was owned by Mose Reed.

8. No ship officer or personnel was in the vicinity when the accident occurred, or knew anything of the accident, except what was told to them by Strachan Shipping Co. employees, and the vessel's officers and crew were not aware of the improper manner of loading by using hand hooks in the steel bands, which hand hooks the stevedore's longshoremen were using to load the cargo.

9. The skids on the crate made it suitable to being moved by fork lift truck, platform jacks or crowbars or pry bars, none of which was supplied by Strachan Shipping Company.

10. The steel bands around the crate were fit and proper for the purpose of containing the contents of the package and holding it onto the wooden platform and skid, which steel bands were 3/4 inches wide by .020 of an inch thick. There was no evidence that the steel band was in any way defective or inadequate.

11. The steel bands were not made to be pulled on with hand hooks, which pulling can cause the band to be fractured, kinked or cut, which weakens the band and allows it to part. It is an improper and unsafe practice to use the hand hook on such steel bands, even though it may have been customary at Strachan Shipping Co., but not necessarily with all stevedores in the port of New Orleans.

12. A preponderance of the testimony established that the bands were not intended to be used in manhandling cargo with hand hooks.

13. Plaintiff gave confusing, incomplete and inconsistent explanations of what occurred, and was careless and negligent in not taking a proper stance when placing his hand hook in the steel band in attempting, with all his might, with two hands on his hook, to drag the 1100 lb. crate.

14. There is no evidence that the vessel or crate in question was unseaworthy for their intended purposes in this situation.

15. The plaintiff Mose Reed is not entitled to judgment as he has not proved that the vessel was in any way unsea-

worthy. The improper method of handling the crates is operational negligence for which no recovery can be allowed under the law against the vessel owner.

## CONCLUSION OF LAW

■■ 1. The burden of proving unseaworthiness of a vessel rests entirely upon the plaintiff. The mere breaking of a steel band such as the one in this case does not render the vessel unseaworthy. Freitas v. Pacific-Atlantic Steamship Company, 218 F.2d 562 (9th Cir., 1955); Russo v. United States, 183 F.Supp. 673 (E.D.N.Y.1958).

■ 2. The 1100 pound crate, including the steel bands, and also the vessel were reasonably fit for their intended use, and the vessel owner is not obliged to furnish an accident-free ship. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); Green v. Skibs, A/S Mandeville, 186 F. Supp. 459 (E.D.S.C.1960); Phipps v. N. V. Nederlandsche Amerikaansche S. M., 259 F.2d 143 (9th Cir., 1958).

■ 3. The improper manner of loading, in this case by plaintiff placing his hand hook under the steel band to move the 1100-lb. skid, was "operational negligence" by the contract stevedore, and is of itself an insufficient basis to sustain a finding of unseaworthiness. Spinelli v. Isthmian Steamship Co., 326 F.2d 870 (2nd Cir., 1964), cert. denied 377 U.S. 935, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964), rehearing denied 377 U.S. 1010, 84 S.Ct. 1912, 12 L.Ed.2d 1058 (1964); Puddu v. Royal Netherlands Steamship Co., 303 F.2d 752 (2nd Cir., 1962) cert. denied 371 U.S. 840, 83 S. Ct. 67, 9 L.Ed.2d 75 (1962).

■ 4. The stevedore, Strachan Shipping Co., third party defendant, during a step or phase of a typical and routine operation, abused the use of seaworthy equipment in that the 1100 pound skid which was not defective in any way, and which they could have safely handled with a fork lift truck which could have

been placed in the hold, platform jacks or pry bars, was handled with hand hooks, and the abuse of equipment does not render the vessel unseaworthy, in the instant case it is only "operational negligence." Spinelli v. Isthmian Steamship Co., supra; Berti v. Compagnie de Navigation Cyprien Fabre, 213 F.2d 397 (2nd Cir., 1954); Di Vittorio v. Skiles a/s Siljestad, 244 F.Supp. 48 (D.C.N.Y.1965). Antoine v. Lake Charles Stevedores, Inc., Lykes Bros. Steamship Co. and Travelers Insurance Co., 249 F.Supp. 290 (W.D.La.1965).

■ 5. The mere fact that there may be a long accepted or customary practice for longshoremen of a given stevedore to pull on bands with hand hooks, is not an excuse when it is an improper or unsafe practice, as in this case. Casbon v. Stockard Steamship Corp., 173 F.Supp. 845 (E.D.La.1959); Coleman v. Jahncke Service, Inc., 341 F.2d 956 (5th Cir., 1965); Schlicter v. Port Arthur Towing Co., 288 F.2d 801 (5th Cir., 1961), cert. denied 368 U.S. 828, 82 S. Ct. 50, 7 L.Ed.2d 32.

■ 6. The manner of physically handling such an ordinary crate, bale or bundle, is the clearest example of a detail within the special competence and peculiar responsibility of the master stevedore contractor, in this case Strachan Shipping Co. Knox v. United States Lines Co., 294 F.2d 354 (3rd Cir., 1961).

■ 7. The vessel owner cannot be held responsible for the negligence of the stevedore unless the facts indicate that the owner or the vessel's agent knew or should have known of the existence of a dangerous condition, and there was no evidence whatsoever in the case at bar that the defendant-shipowner knew or should have known that the longshoremen were engaging in a dangerous practice. Knox v. United States Lines Co., supra 294 F.2d at p. 355.

■ 8. The operating negligence by the stevedore constitutes a breach of its implied warranty of workmanlike service, and where the breach exposes the

**812**

ship owner to possible liability, the stevedore remains liable for the expenses it has caused the ship owner, regardless of the outcome of the case. Where the credible evidence indicates that the proximate cause of the ship owner's monetary loss by reason of its forced defense of an action, is the operating negligence of the stevedore, this breach of its warranty subjects it to a claim for costs, disbursements and attorneys' fees. Di Vittorio v. Skiles a/s Siljestad, 244 F.Supp. 48 (D.C.N.Y.1965). See also Strachan Shipping Co. v. Koninklyke Nederlandsche Stoombout Maalschappy, 324 F.2d 746 (5th Cir., 1963). Only the potential liability of the vessel owner need be shown to establish the vessel owner's claim of indemnification. Damanti v. A/S Inger, 314 F.2d 395 (2nd Cir., 1963). If the plaintiff's injury which gives rise to the action is caused by either the plaintiff's own negligence or the negligence of a fellow longshoreman, the warranty is breached. Guarracino v. Luckenbach Steamship Co., 333 F.2d 646 (2nd Cir., 1963); Massa v. C. A. Venezuelan Navigation, 332 F.2d 779 (2nd Cir., 1964); Damanti v. A/S Inger, supra. See also the case of Hirstius v. Hess Terminal Corp., U.S. D.C., E.D.La., New Orleans Div., 286 F.Supp. 566.

9. Defendant vessel owner is entitled to a judgment against the plaintiff longshoreman, as there is no proof of unseaworthiness of the vessel or the cargo, and the suit of plaintiff is accordingly dismissed with prejudice and costs. Necessarily the third party suit is dismissed as to Strachan Shipping Company, but there is to be judgment in favor of the Bank Lines, Ltd., defendant, and against Strachan Shipping Company, third party defendant, for breach of warranty and for costs, disbursements and attorneys' fees, and if the amount so due cannot be agreed upon by the parties concerned, the matter will be set down for hearing at a later date.

A decree and final judgment may be entered accordingly.