Tyson JOHNSON, Plaintiff,

v.

EXCELSIOR SHIPPING COMPANY, Ltd., Defendant and Third-Party Plaintiff,

v.

GULF STEVEDORING CO., Inc., a corporation, Third-Party Defendant.

Johnnie DRAKE, Jr., Plaintiff,

v.

EXCELSIOR SHIPPING COMPANY, Ltd., Defendant and Third-Party Plaintiff,

v.

GULF STEVEDORING CO., Inc., a corporation, Third-Party Defendant.

Civ. A. Nos. 4992–68–T, 4993–68–T.

United States District Court,
S. D. Alabama, S. D.

Nov. 10, 1970.

Ross Diamond, Jr., Diamond & Lattof, Mobile, Ala., for plaintiffs.

Oliver J. Latour, Jr., Mobile, Ala., for defendant and third-party plaintiff.

E. B. Peebles, III, and Rae Crowe, Mobile, Ala., for third-party defendant.

DANIEL HOLCOMBE THOMAS, Chief Judge.

The above-styled cases, having been heretofore consolidated for trial, were regularly set down for trial before the Court on a former day, and after hearing and considering the evidence and arguments of counsel, the Court hereby makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Plaintiffs Tyson Johnson and Johnnie Drake, Jr., were longshoremen employed by Gulf Stevedoring Co., Inc. on March 25, 1968, at which time the SS SOPHIE C was moored port side to at the Alabama State Docks & Terminals in the Port of Mobile.

2. Gulf Stevedoring Co., Inc. had contracted to load a cargo of palletized bagged rice aboard the SS SOPHIE C, which loading operation was under its complete charge and direction.

3. On the occasion in question when Plaintiffs were injured they were working in the lower hold of the #1 hatch. of the S S SOPHIE C with other fellow longshoremen.

4. At approximately 0830 hours on the morning of the accident, stevedore's walking boss requested that the vessel furnish more steam to the #1 hatch. Within ten minutes this request was complied with and more steam was furnished.

5. At approximately 1530 hours on March 25, 1968, the starboard side carrier at the #1 hatch called for a safety net to be lowered into the hold so that it could be put up to protect the men from falling off of the rice cargo. The net was thereafter lowered into the hold and the side carrier advised the signalman to hold the next load as the men would be putting up the net.

6. Rather than halting loading operations as advised, the signalman called for another pallet load of rice and moved

it onto the main deck, suspending it in the air. The load consisted of 30–36 bags of rice, each weighing approximately 100–110 pounds.

7. The load was stopped or held in a suspended position over or partially over the hatch opening, or in extreme proximity to the hatch coaming, for a period of time. The testimony ranged from a matter of seconds to fifteen minutes.

8. Plaintiffs were injured when bags of rice fell from the suspended pallet striking each of them. Each plaintiff sustained pain and suffering, loss of wages and was caused to undergo considerable medical treatment. Each plaintiff is still experiencing some difficulty.

9. The starboard winch operator testified during the trial of this case and while his testimony was somewhat confused, he stated at one time that the instant he started to hold the sling that due to lack of steam pressure the winch would not hold, even though he used the foot brake in addition to the steam. Nevertheless, he also testified that at that instant he completely shut off the steam. Expert testimony revealed that in order to hold a load suspended by use of steam, the steam pressure must be left on.[1] The stevedore's walking boss testified that any shortage of steam should be reported to him by the longshoreman and he would then take it up with the vessel. He testified that there was no shortage of steam after the lunch hour. He further testified that there were no complaints about the foot brake not operating on the starboard winch. After the attorneys had completed questioning this witness, the Court then again asked him if there was any shortage of steam after the lunch hour, and he again replied, "No". The Court therefore finds that the SS SOPHIE C applied adequate steam for the operation of the winches at the #1 hatch at the time of the accident and that the accident involved no malfunction of the winches and cargo gear and the Court finds no unseaworthiness.

10. The Court further finds that the proximate cause of the accident was the combined negligence of the signalman and the high-derrick winch operator and their acts constituted operational negligence. Such conduct by the stevedore constitutes a breach of its implied warranty of workmanlike performance.

11. Third-Party Plaintiff tendered the defense of each case to Third-Party Defendant but the tender was refused.

12. On June 1, 1970, Third-Party Plaintiff settled the Tyson Johnson case against it for $25,000 and the Johnnie Drake, Jr., case against it for $5,000, agreeing with each plaintiff to pay in addition to the aforementioned sums, the amount awarded by the Court to Third-Party Defendant under its counterclaim against plaintiffs. The Court finds the amount and terms of these settlements to be reasonable.

13. The Court finds that the Third-Party Plaintiff was potentially liable to plaintiffs in view of the fact that there was some evidence that the accident was caused by inadequate steam pressure and foot brake failure of the starboard winch.

14. Plaintiffs, Johnnie Drake, Jr. and Tyson Johnson, have received the sum of $3,434.99 as compensation under the Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 901 et seq.

## CONCLUSIONS OF LAW

1. The stevedore's warranty of workmanlike performance (WWLP) requires the exercise of reasonable safety not only in the handling of cargo but also in the use of equipment incidental thereto. Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S. Ct. 232, 100 L.Ed. 133 (1956); Weyer-

1. The Court notes that although the port winch operator was present in court and available to testify, stevedore did not call him to explain and shed any light on the accident.

haeuser S. S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed. 2d 491 (1958); Strachan Shipping Co. v. Koninklyke Nederlandsche S. M., N. V., 324 F.2d 746 (5th Cir. 1963), cert. denied 376 U.S. 954, 84 S.Ct. 969, 11 L. Ed.2d 972.

2. Whenever a stevedore breaches its WWLP and such breach exposes the shipowner to liability for personal injuries suffered, the stevedore is liable for indemnification to the shipowner for reasonable attorneys' fees and expenses incurred in defending such claims. The shipowner must also tender the defense of the case to the stevedore prior to incurring substantial expenses and such tender must be refused. Strachan Shipping Co. v. Koninklyke Nederlandsche S. M., N. V., supra; Rederi A/B Dalen v. Maher, 303 F.2d 565 (4th Cir. 1962); Reed v. Bank Lines, Ltd., 285 F.Supp. 808 (E.D.La.1966), affirmed sub nom., Reed v. M/V Foylebank, 415 F.2d 838 (5th Cir. 1969), cert. denied 397 U.S. 910, 90 S.Ct. 909, 25 L.Ed.2d 91 (1970). In each of the above cited cases, the longshoreman did not recover from the shipowner.

■ 3. In order to recover indemnity from the stevedore (or other contractor) when the shipowner makes a settlement with a longshoreman (or other non-employee performing duties traditionally done by seamen), the shipowner must establish the following:

a. *Potential Liability to shipowner*

Reed v. Bank Lines, supra; Underwater Services, Inc. v. Brown and Root Marine Operators, Inc., 376 F.2d 852 (5th Cir. 1967) [In *per curiam* opinion, Court adopted opinion of District Court, Smith v. Brown & Root Marine Operators, Inc., 243 F.Supp. 130 (W. D.La.1965)]; Damanti v. A/S. Inger, 314 F.2d 395 (2nd Cir. 1963), cert. denied Daniels & Kennedy, Inc. v. A/S Inger, 375 U.S. 834, 84 S.Ct. 46, 11 L. Ed.2d 64.

b. *Reasonableness. of settlement*

Underwater Services, supra; Damanti, supra. The criteria for determining reasonableness are the size of possible recovery and the degree of probability of claimant's success. The Court must make the determination realizing the third-party plaintiff "was required to use its foresight rather than its hindsight in evaluating the situation relative to its probable liability." Damanti, supra at 397; Strachan Shipping Co., supra.

c. *Breach of WWLP which was the proximate cause of the accident.* Ryan, supra; Underwater Services, supra; Damanti, supra.

d. *Vessel was not guilty of conduct sufficient to preclude indemnity.*

Southern Stevedoring and Contracting Co. v. Hellenic Lines, Ltd., 388 F.2d 267 (5th Cir. 1968); D/S Ove Skou v. Hebert, 365 F.2d 341 (5th Cir. 1966)

■ 4. An occurrence giving rise to liability for unseaworthiness must be a *condition* rather than an instantaneous injury occasioned by a momentary act of negligence by a member of the crew or a longshoreman doing a seaman's duty. Dillon v. M. S. Orental Inventor, 426 F. 2d 977 (5th Cir. 1970). The latter is what is known as operational negligence and is, in the Fifth Circuit, a complete defense to a claim of unseaworthiness. Antoine v. Lake Charles Stevedores, Inc., 376 F.2d 443 (5th Cir. 1967); Robichaux v. Kerr McGee Oil Industries, Inc., 376 F.2d 447 (5th Cir. 1967); Grisby v. Coastal Marine Service of Texas, Inc., 412 F.2d 1011 (5th Cir. 1969). [It is noted that Chief Justice Burger (then Circuit Judge from District of Columbia) was on the panel that decided this case; Chief Judge John Brown wrote the opinion.[2]] Therefore, whenever operational negligence occurs and an injury producing accident is the result, the stevedore breaches its WWLP. Reed v. Bank Lines, Ltd., supra.

2. Still not Mount Olympus, however. 412 F.2d 1033, footnote 50.

5. Third-Party Defendant is entitled to recover from Plaintiffs under its counterclaim said amounts as are represented by the compensation liens, which are the amounts of compensation paid by it to plaintiffs and medical expenses. 33 U.S.C. § 933, Haynes v. Rederi A/S Aladdin, 362 F.2d 345 (5th Cir. 1966), cert. denied 385 U.S. 1020, 87 S.Ct. 731, 17 L.Ed.2d 557; Boswell v. Terrace Navigation Corporation, 384 F.2d 186 (5th Cir. 1967). However, since the Third-Party Plaintiff has agreed to pay the amounts recovered by Third-Party Defendant against Plaintiffs on its counterclaims, and such payment, if made, would be offset by an increased recovery by Third-Party Plaintiff on its claim over against Third-Party Defendant, no judgment will be entered on such counterclaim and the judgment awarded Third-Party Plaintiff herein will not include such amounts.

6. Third-Party Plaintiff is entitled to a judgment against the Third-Party, Defendant for Third-Party Plaintiff's costs, disbursements and attorneys' fees, and if the amount so due cannot be agreed upon by the parties concerned within fifteen days, the matter will be set down for hearing thereon at a later date.

A decree and final judgment will be entered accordingly.