Ralph BILLECI, Appellant,

v.

UNITED STATES of America, Appellee,

and

California Stevedore and Ballast Company, Appellee-Impleaded.

No. 17112.

United States Court of Appeals Ninth Circuit.

Jan. 18, 1962.

Mansfield Davis, San Francisco, Cal., for appellant.

William H. Orrick, Jr., Asst. Atty. Gen., Washington, D. C., Cecil F. Poole, U. S. Atty., Keith R. Ferguson, Sp. Asst. to the Atty. Gen., San Francisco, Cal., R. H. Nicholson, Sp. Atty., Dept. of Justice, San Francisco, Cal., for appellee U. S.

Partridge, O'Connell, Partridge & Fall, Robert G. Partridge, Jr., San Francisco, Cal., for appellee Calif. Stevedore & Ballast Co.

Before CHAMBERS and HAMLIN, Circuit Judges, and JAMESON, District Judge.

JAMESON, District Judge.

Appellant, longshoreman employed by appellee-impleaded, instituted this libel against appellee, the owner and operator of USNS General Hugh J. Gaffey, for personal injuries sustained on November 29, 1958, when appellant was struck by a falling hatch board while performing unloading operations aboard the vessel. The libel was dismissed, the trial court holding that the crew of the General Gaffey was not negligent and that the vessel was seaworthy. Having reached this conclusion it was unnecessary to determine whether appellee would be entitled to indemnification from appellee-impleaded. The opinion of the trial court is reported at 185 F.Supp. 711 and contains a full statement of the facts relevant to this appeal.

Appellant was a member of a crew of stevedores and about 8:30 A.M. moved to hatch No. 5, where the crew was engaged in removing hatch covers from the various deck levels preliminary to discharge of the cargo. About 9:55 A.M. appellant had just attached a hatch section to the removal apparatus and was standing on the port side aft of the hatch, waiting for the section to clear the hold. The starboard winch fell out of gear and became free-wheeling, causing the hatch section which had been raised but a few feet to simultaneously drop and swing to the port side. It skidded along the structure of the ship and struck appellant with considerable force, causing severe injuries to his left foot. (185 F.Supp. at 712.)

There are two commonly used safety devices to keep a winch of the type carried by the General Gaffey from falling out of gear. The lever used to shift the winch has a steel strap welded to it in which there are two holes. The lever may be locked in place, and thus the winch locked in gear, by inserting a pin through one of the holes and down into another hole in the main structure of the winch. A pin provided for this purpose hangs from a chain on the winch. If the pin is not used, the lever may be lashed in gear with a wire or rope.

The trial court found that the type of winch used by the General Gaffey is not uncommon, and that the longshoremen who operated it were familiar with its

safety devices.[1] At the time appellant was injured and during the preceding hour and a half that the starboard winch was operated by the longshoremen, neither of the two precautionary measures was used. Appellant agrees "that this was the proximate cause of libelant's injuries as winches do not ordinarily fall out of gear if the locking pin is in place or the lever is locked in position".

Appellant's position on this appeal seems best summarized by the following statement from his brief: " * * * the winch was safe and seaworthy, with the safety pin in place. It was unseaworthy with the safety pin out. A human agency —either the ship's employees or Billeci's fellow workers—removed the pin. The winch was thus rendered unseaworthy. From the standpoint of Billeci's claim, it is immaterial whether the pin was removed by the members of the crew or by his fellow workers.[2] In either case the winch was rendered unseaworthy, * * the shipowner was liable for injury proximately resulting from such unseaworthiness." (Appellant's opening brief, p. 20.) [3]

It is well settled that a shipowner owes a non-delegable duty to furnish a seaworthy vessel and that this duty extends to employees of stevedoring companies; [4] that the warranty of seaworthiness extends to appliances appurtenant to the vessel and does not end with supplying the appliances but also includes keeping them in order, and the exercise of due diligence does not relieve the owner of his obligation to furnish adequate appliances; [5] that this duty applies to an unseaworthy condition which may be only temporary; [6] and that the shipowner is not relieved of these responsibilities by turning control of loading or unloading over to a stevedore company.[7]

On the other hand, while the duty is absolute, it is a duty only to furnish a vessel and appliances reasonably fit for their intended use; [8] the law does not impose upon the shipowner the burden of an insurer or the duty to provide an accident-proof ship; [9] and the ship-

1. The court found further that the longshoremen "had operated the port winch which was identical to the starboard winch to lower the cargo boom into position just prior to the opening of the hatches and the same stevedores had then placed an identical locking pin into position thus locking the clutch lever of the port winch".

2. The trial court found that, "There was no duty or function of the ship's crew to lock the winches in gear before relinquishing control to the stevedores and that part of the stevedores' job is the raising, lowering and specific positioning of the booms, which is work that entails the shifting of gears and consequently the removal and replacement of the pin which locks the winch in and out of gear." Finding XII.

3. Appellant accordingly challenges that portion of Finding IX "that the winch and its appurtenances were seaworthy and reasonably fit for their intended use, and that libelant's injuries were directly and solely caused by a fellow longshoreman's negligent operation of the winch".

4. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

5. Mahnich v. Southern S.S. Co., 1944, 321 U.S. 96, 103, 64 S.Ct. 455, 88 L.Ed. 561; Petterson v. Alaska S.S. Co., 9 Cir., 1953, 205 F.2d 478, aff'd 1954, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798.

6. Mitchell v. Trawler Racer, Inc., 1960, 362 U.S. 539, 549, 80 S.Ct. 926, 4 L.Ed. 2d 941.

7. Crumady v. Joachim Hendrik Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed. 2d 413.

8. See Mitchell v. Trawler Racer, Inc., supra, where the Court said: "What has been said is not to suggest that the owner is obligated to furnish an accident-free ship. The duty is absolute, but it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather any conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service." (362 U.S. at 550, 80 S.Ct. at 933.)

9. Freitas v. Pacific-Atlantic Steamship Company, 9 Cir., 1955, 218 F.2d 562; Phipps v. N. V. Nederlandsche Amerikaansche S., M., 9 Cir., 1958, 259 F.2d 143.

owner's warranty of seaworthiness does not extend to a negligent use by longshoremen of seaworthy appliances.[10]

Did appellant's injury result from an unseaworthy appliance or solely from the negligent use by his fellow longshoremen of a seaworthy appliance?

In support of his contention that the appliance was unseaworthy, appellant relies primarily upon Crumady v. The Joachim Hendrik Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413, and Grillea v. United States, 2 Cir., 1956, 232 F.2d 919. In Crumady, the employees of the shipowner set a "cut-off" device at twice the safe working load of a winch and unloading gear. The topping-lift supporting the boom gave way and injured a stevedore. The district court found the vessel unseaworthy and that the primary cause of the accident was the negligence of the stevedoring company which brought into play the unseaworthy condition of the ship. The court of appeals reversed, holding that the sole cause was the negligence of the stevedores. In reinstating the judgment of the district court, the Supreme Court held that while the winch was not inherently defective, "it was adjusted by those acting for the vessel owner in a way that made it unsafe and dangerous for the work at hand" and that the case accordingly was "no different in principle from loading or unloading cargo with cable or rope lacking the test strength for the weight of the freight to be moved". (358 U.S. at 427, 428, 79 S.Ct. 448.)

In Grillea, during unloading operations longshoremen placed the wrong hatch cover over the "pad-eye". A stevedore stepped upon it and was injured when it gave way beneath him. The court held that the misplaced hatch cover rendered the vessel unseaworthy and the libelant was allowed to recover. The accident occurred *after* the hatch cover had been misplaced—not in the act of misplacing it or in the negligent use of an appliance at the time of injury.[11]

The instant case is distinguishable from both Crumady and Grillea. This is not a case where the negligent act had *terminated* and an appliance was left in an unsafe condition. As the trial court observed, the locking pin does not remain in a fixed position during stevedoring operations, but must be moved in and out whenever it becomes necessary to shift gears. It may not be said that each time a winch driver removes the pin to shift gears he thereby renders the winch unseaworthy, for in order to operate a winch reasonably for its intended use, it is necessary to shift the gear from time to time. To leave the pin out at the termination of the work would be proper and would not result in an unsafe condition. Plaintiff's injury was sustained by the negligent *use* of a seaworthy appliance at the very moment of injury. As the trial court aptly said: "The vessel was

10. Titus v. The Santorini, 9 Cir., 1958, 258 F.2d 352; Royal Mail Lines, Ltd. v. Peck, 9 Cir., 1959, 269 F.2d 857. In the Titus case, this court said: "It may be that the Supreme Court decisions will reach the point where the shipowner is liable for unseaworthiness based upon the very act of a fellow longshoreman which causes the injury, but it does not appear that the Supreme Court has gone that far. It would seem that unseaworthiness must be a pre-existing condition." (258 F.2d at 355.)

11. In recognizing that the misplaced cover had become a part of the deck platform prior to the accident, Judge Learned Hand said: "(I)f the wrong hatch cover had been placed over the 'pad-eye' the day before the libellant stepped on it, this ship would have been unseaworthy * *.

    *     *     *     *     *

The cover was one of two or three * * place(d) on the after section of the hatch; it had become part of the platform across which the two (libellant and another) walked to gain access to the middle section on which they were going to place another cover. The misplaced cover had therefore become as much a part of the 'tweendeck for continued prosecution of the work as though it had been permanently fixed in place." (232 F. 2d at 922, 923.)

unsafe only so long as the negligence continued, whereas in Grillea, the negligent act terminated shortly after it began, but the unsafe situation continued to exist."

The trial court properly found "that the winch and its appurtenances were seaworthy and reasonably fit for their intended use and that libelant's injuries were directly and solely caused by a fellow longshoreman's negligent operation of the winch".

Judgment affirmed.