Oswald F. HANSEN, Libelant,

v.

PACIFIC FAR EAST LINE, INC., etc.,
Respondent.

PACIFIC FAR EAST LINE, INC., etc.,
Petitioner,

v.

ASSOCIATED BANNING COMPANY,
Respondent Impleaded.

No. 38-61.

United States District Court
S. D. California,
Central Division.

Oct. 10, 1962.

Margolis & McTernan, Los Angeles, Cal., for libelant.

Acret & Perrochet, Los Angeles, Cal., for respondent.

CRARY, District Judge.

Libelant, age 56, a stevedore foreman, with fourteen years experience in that capacity, seeks damages against Respondent-Petitioner, the ship owner, for personal injuries to his right elbow and arm received aboard ship on November 25, 1960, during a boom re-topping operation in connection with the unloading from hatch No. 5. Respondent-Petitioner, the ship owner, filed a third party complaint against the impleaded Respondent, Associated Banning Company, employer of Libelant, for indemnity. On August 7, 1961, an order was made and entered in the case transferring the cause to the admiralty calendar.

The unloading involved commenced about 8:30 a. m., on November 25, 1960, and the last load out of hatch No. 5 was at 11:55 a. m. The injuries to the Libelant, which occurred at approximately 11:00 a. m., were to his right elbow, and he presently suffers residual effects of the said injuries in the form of discomfort, pain on the use of the arm in climbing hatch ladders, a partial weakening of grip in the right hand, and inability to fully extend the right arm. The said injury to the right elbow of Libelant was caused by his being struck on said elbow by the topping lift wire on its suddenly snapping taut during the re-topping of the boom. Libelant at the time was engaging or attempting to engage the so called "clutch" with the topping lift drum. He was having difficulty in accomplishing the engagement and it had

not been accomplished when he was injured.

At the time of the accident one member of the crew of the said Libelant, of which there were six in number, was attempting to shift the weight of the port boom involved from the cleat on the king post to the chain stopper which he had engaged with the lift wire. All of the members of the crew were experienced longshoremen. The court finds that in attempting to ease the topping lift wire from the cleat it got away from his control, resulting in the boom dropping suddenly through an arc of approximately twenty-five or more degrees thereby causing the topping lift wire near Libelant to snap taut and thereby injure said Libelant.

■ It is the uncontradicted evidence that the custom in the area requires the use of two men in the shifting of the weight of the boom from the cleat to the chain stopper in a re-topping operation, one to hold the chain stopper until the weight is entirely shifted to it and the other to surge the topping lift wire from the cleat until the weight of the boom has been eased from the cleat to the chain stopper. The evidence further shows that the use of two men in this operation is required to insure a reasonably safe procedure. The court finds that one man is required on the cleat to avoid the very occurrence that injured the Libelant herein and that the proximate cause of his injury was the negligence of the longshoreman in attempting to release the topping lift wire from the cleat and to hold the chain stopper at the same time.

■ After considering the evidence in its entirety, the court finds that the gear, equipment, machinery and devices furnished and employed for the purpose of raising and lowering the port boom at the No. 5 hatch were adequate for said purpose and when used as intended would not create an unreasonable risk that the boom would fall. The court further finds that there was a sufficient number of longshoremen in the crew of Libelant to safely perform the re-topping or lower-

ing of the No. 5 hatch boom at the time of the accident on November 5, 1960. The evidence does not disclose, in the opinion of the court, that the ship involved was unseaworthy or that the Respondent-Petitioner did not provide Libelant with a reasonably safe place to work. The court finds that there was no negligence on the part of the ship owner and it was stipulated by all parties that the clutch, though it may have been faulty, in no wise caused or contributed to the accident.

In Hugev v. Dampskisaktieselskabet International, D.C., 170 F.Supp. 601, Judge Mathes, of this court, on pages 610 and 611 of his opinion, sets forth one of the obligations of the ship owner to be as follows:

" * * * to exercise ordinary care under the circumstances to place the ship on which the stevedoring work is to be done, and the equipment and appliances aboard ship, in such condition that an expert and experienced stevedoring contractor, mindful of the dangers he should reasonably expect to encounter, arising from the hazards of the ship's service or otherwise, will be able by the exercise of ordinary care under the circumstances to load or discharge the cargo, as the case may be, in a workmanlike manner and with reasonable safety to persons and property; * * *."

The Hugev case was affirmed by the U. S. Court of Appeals for the Ninth Circuit in 274 F.2d 875.

In the case of Arena v. Luckenbach Steamship Company, 1 Cir., 279 F.2d 186, the longshoreman Libelant was injured by the falling of rolls of paper being loaded on the ship of Defendant ship owner by a crew of which Libelant was a member. The court concluded that the injury was proximately caused by the negligent loading of the rolls of paper by the longshoremen for movement from the dock into the hold of the ship and that the vessel was not made unseaworthy by reason of negligence of the longshoremen in the use of the assertedly defective

board involved in the loading of the rolls of paper and that the owner of the vessel was not liable for injuries sustained by the Libelant longshoreman when the rolls of paper fell while being loaded aboard the vessel where the choice of the side boards used in the preparing of the paper for loading was that of the longshoremen.

As stated by the Appellate Court in its opinion on Petition for Re-hearing, page 189, "if a winchman employed by a stevedore negligently lowered a boom on to a longshoreman, it would be true, in a sense, that the longshoreman had not been working in a safe place. But absent a showing that a winchman was an unfit individual we could not say that the vessel was unseaworthy."

■ In the instant case the longshoreman attempting to control the topping lift wire on both the cleat and the chain stopper negligently caused the wire to snap taut resulting in the injury to Libelant but this fact did not make the vessel unseaworthy. See also Freitas v. Pacific Atlantic Steamship Company, 9 Cir., 218 F.2d 562 at 564, where the court refers to an accident "directly brought about by an improper, if not foolhardy, use of the ship's gear."

The District Court, in the case of Billeci v. United States of America, 185 F.Supp. 711 (Calif.1960), affirmed in 9 Cir., 298 F.2d 703, states at page 715 " * * * negligent operation of seaworthy appliances by longshoremen cannot create liability in the ship owner." It follows that the negligent use by a longshoreman of seaworthy equipment and gear for raising and lowering a boom, which caused the injury of Libelant, could not create liability in the ship owner on the grounds of negligence or unseaworthiness.

The other points raised by counsel, including contributory negligence on the part of the Libelant, which are not specifically mentioned hereinabove would appear to be moot by reason of the foregoing findings.

In accordance with the findings as above noted, the court concludes that the Libelant has not met his burden of proof and that he may not recover against the Respondent-Petitioner, Pacific Far East Lines, Inc., a corporation, for the injuries received.

Counsel for Respondent-Petitioner is requested to prepare findings of fact, conclusions of law and judgment in accordance with the above memorandum and in compliance with Rule 7, Rules of the United States District Court for the Southern District of California.