**Joseph J. FERRANTE, Antonio Hroncich and Vito Salvemini, Appellants**

v.

**SWEDISH AMERICAN LINES and the STEAMSHIP MALTESHOLM, her engines, tackle, apparel, etc.,**

v.

**NACIREMA OPERATING CO., Inc.**

**Joseph J. FERRANTE, Antonio Hroncich and Vito Salvemini**

v.

**SWEDISH AMERICAN LINES, Appellant, and the Steamship Maltesholm, her engines, tackle, apparel, etc.,**

v.

**NACIREMA OPERATING CO., Inc.**

**Nos. 14146, 14147.**

United States Court of Appeals Third Circuit.

Argued Oct. 8, 1963.

Decided April 16, 1964.

---

Harvey Goldstein, New York City, for appellants in 14146; J. M. Estabrook, New York City, for appellant in 14147 (Samuel M. Cole, Jersey City, N. J., proctor for appellants, Goldstein & Sterenfeld, New York City, of counsel, on the brief), for appellants.

George P. Moser, Union City, N. J., for Nacirema Operating Co., Inc. (Moser, Roveto & McGough, Union City, N. J., proctors for impleaded-respondent, appellee, William V. Roveto, on the brief), for appellee.

Before KALODNER, STALEY and SMITH, Circuit Judges.

KALODNER, Circuit Judge.

The District Judge found that the negligence of a stevedore in using a faulty method in discharging a ship's cargo did not make the ship unseaworthy or negligent and this appeal and cross-appeal followed.[1]

The issues presented are whether the District Court used proper legal standards in arriving at its findings that the ship was neither negligent nor unseaworthy. The libellants contend that the District Court's fact-findings were "clearly erroneous" because they were the end result of the failure to apply proper legal standards.

Since the District Court's Findings of Fact and Conclusions of Law are essential to our disposition they will be stated as follows:

"FINDINGS OF FACT

"1. Libelants, Joseph J. Ferrante, Antonio Hroncich and Vito Salvemini, were on October 28, 1960, and now are residents of the State of New Jersey, and were injured while working as longshoremen employed by Nacirema Operating Co.,

---

1. The District Court dismissed the libel on motion at the conclusion of the libellants' testimony on the score of the ship's unseaworthiness and negligence.

Inc. in the #2 hold of the M/S Maltesholm on October 28, 1960.

"2. Claimant-respondent, Swedish American Lines, was and now is a corporation duly organized and existing under and by virtue of the laws of the Kingdom of Sweden and was, on October 28, 1960, and still is, the owner of the M/S Maltesholm.

"3. Respondent-Impleaded, Nacirema Operating Co., Inc., was, on October 28, 1960, and now is, a corporation duly organized and existing under and by virtue of the laws of one of the states of the United States and was on October 28, 1960, and still is, doing business in the State of New Jersey as a stevedore.

"4. The M/S Maltesholm was on October 28, 1960, and now is, a merchant vessel of Swedish registry, her home port being Gothenburg, Sweden. The ship had six hatches, #2, the site of the accident, being in the forward part of the ship.

"5. Libelant Ferrante asked the stevedore hatch boss for slings to be used in unloading some plywood boards. In turn the hatch boss asked the third mate of the ship for 'slings.'

"6. The third mate of the M/S Maltesholm procured and gave to the stevedore hatch boss two manila rope slings which the hatch boss then sent down to the employees of Nacirema, who proceeded to make up a sling load of plywood boards by assembling two piles of the boards side by side, these piles resting on 4 x 4 timbers so that each sling could be passed beneath the boards. Each sling was passed around the piles, one at each end, looped through itself and attached to a single hook. The hook was attached to wire rope runners which would lift the sling load from the hold.

"7. The making up of this sling load was done entirely by and under the direction of employees of Respondent-Impleaded.

"8. The only suggestion made by the third mate to the hatch boss was not to make big sling loads 'because something might be could happen and broken,' to which the hatch boss replied "I am the foreman and I know what I am doing." No attempt was made by the third mate to direct the method of unloading nor did he interfere in any way with the conduct of the stevedoring.

"9. When the sling load of boards was lifted out of the hatch, the load came apart and some of the boards fell, striking Libelants and injuring them.

"10. Libelants' expert witness (with extensive experience as a longshoreman, as a supervisor of loading and unloading ships and as a ship foreman) testified that it was not standard procedure to make two piles of plywood boards, placed side by side to be lifted by slings, single piles only being used to make a sling load. He further testified that if this standard practice were not followed, it would be an element that would cause the load to fall. He also testified that the use of either rope or wire is standard practice for lifting plywood, and that there was a preference for the use of rope on plywood.

"1. The accident was caused by the manner in which the sling load was made up by employees of Respondent-Impleaded with two piles, side by side.

"12. The duties of the third mate did not include supervision and control of the manner in which the longshoremen were doing their work. Rather, his duties consisted in pointing out the cargo to be discharged at Jersey City and also to observe the longshoremen so as to prevent damage to or theft of cargo, damage to the ship or smoking by the longshoremen.

"13. At the close of Libelant's case as to liability, Libelants having

reserved their rights to introduce further medical testimony, Claimant-Respondent reserving its rights to proceed further if its motion be denied, moved to dismiss the libel and Respondent-Impleaded, with a similar reservation of rights if its motion be denied, moved to dismiss the petition.

## "CONCLUSIONS OF LAW

"1. This Court has jurisdiction under Article III, Sec. 2 of the Constitution and under Title 28 U.S.C. Sec. 1333.

"2. The M/S Maltesholm was seaworthy at the time of the accident causing Libelants' injuries because the ship's equipment, with which Libelants were working, was reasonably fit for its intended use. Mahnich v. Southern S. S. Co. 321 U.S. 96, [64 S.Ct. 455, 88 L.Ed. 561] (1944); Mitchell v. Trawler Racer, Inc. 362 U.S. 539 [, 80 S.Ct. 926, 4 L.Ed.2d 941] (1960).

"3. In the absence of interference or assumption of authority by a ship's officers or crew, the responsibility for making up slingloads is on the stevedore, not the shipowner, 29 C.F.R. Secs. 9.2, 9.3, 9.81 and 9.82.

"4. The accident of October 28, 1960 was caused solely by the negligence of the stevedores, which negligence did not create an unseaworthy condition.

"5. Absent the exercise of control over the stevedoring operation, a shipowner is not responsible for the negligent manner in which stevedores conduct their work, nor for the negligent use by longshoremen of seaworthy appliances. Billeci v. United States, 298 F.2d 703 (9th Cir. 1962); Puddu v. Royal Netherlands S.S. Co., 303 F.2d 752, 2d Cir. February 20, 1962, affirmed in banc May 15, 1962.

"6. Absent liability upon the shipowner for an unseaworthy condition caused solely by the active negligence of the stevedoring company, there is no issue of indemnification of the shipowner by the stevedore company.

"7. The libel should be dismissed."

It is evident from the foregoing that the District Court regarded as solely dispositive of the issue of the ship's negligence its fact-finding that the ship did not exercise control over the stevedore's negligent method in loading the slings.

It is evident, too, that the District Court regarded as solely dispositive of the unseaworthiness issue the undisputed fact that the ship's equipment, viz., the manila ropes, "was reasonably fit for its intended use."

The facts as found by the District Court [2] may be summarized as follows:

At the time of the accident the stevedore's longshoremen were engaged in discharging 9' x 5' x ¾" plywood boards from No. 2 hold of the M/S Maltesholm; the longshoremen used manila ropes supplied by the ship to form a sling in which two piles or stacks of board were placed; while a sling load was being lifted out of the hatch it came apart and some of the boards fell injuring the libellants; the placing of two piles of boards in a sling was not standard procedure; the loading of the slings "was done entirely by and under the direction" of the stevedore; [3] "the accident was caused by the manner in which the sling load was made up"; [4] the third mate of the ship, one Szewczyk, told the stevedore's foreman "not to make big sling loads 'because something might be could be happen and broken' ", but "no attempt was made by the third mate to direct the method of unloading nor did he interfere in any way with the conduct of the stevedoring." [5]

2. Detailed in the District Court's Findings of Fact and Conclusions of Law.

3. Finding of Fact No. 7.

4. Finding of Fact No. 11.

5. Finding of Fact No. 8.

On the fact-findings stated the District Court held, in sum, in its Conclusions of Law, that the ship was seaworthy "because the ship's equipment [manila ropes] * * * was reasonably fit for its intended use"; the loading method used by the stevedore was negligent but its negligence "did not create an unseaworthy condition"; the ship was not negligent because it did not exercise control over the stevedoring operation; that no issue of indemnification of the shipowner by the stevedore existed "absent liability upon the shipowner for an unseaworthy condition caused solely by the active negligence of the stevedoring company".

First, as to the issue respecting negligence:

■ Applicable to the issue of the ship's negligence are these well-settled principles:

"The work of loading and unloading is historically 'the work of the ship's service.' " [6]

■ Where a ship knows, or should have known, that the stevedore's method

of discharging its cargo does not conform to the standard of reasonable care, and thereby creates a hazardous condition, the ship is negligent when it does not forbid the use of the method.[7]

■ Ordinarily, a ship owes a longshoreman the obligation to provide him with a safe place to work, and its failure to do so constitutes negligence.[8]

■ The District Court erred in failing to apply the foregoing principles and in making the "exercise of control" the exclusive criteria for testing the ship's negligence.

The District Court's fact-findings that the ship's third mate (1) had told the stevedore's foreman not to make big sling loads "because something might be could be happen" and (2) had failed to "interfere in any way with the conduct of the stevedoring"[9] required it to apply the principle that a ship is negligent when it knows of, and does not forbid the use of a stevedore's method of discharging cargo which fails to conform to the standard of reasonable care and creates a

6. Crumady v. The Joachim Hendrick Fisser, 358 U.S. 423, 427, 79 S.Ct. 445, 447, 3 L.Ed.2d 413 (1959).

7. Knox v. United States Lines Company, 294 F.2d 354 (3 Cir. 1961); Beard v. Ellerman Lines, Ltd., 289 F.2d 201 (3 Cir. 1961), rev'd on another issue sub nom. Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines Ltd., 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962).

In Knox we said (294 F.2d p. 357): "If an obviously hazardous condition had been created by the longshoremen [in discharging a ship's cargo] and permitted to exist long enough for normal occasional observation of the course and progress of the work to disclose the existence of the danger to some officer of the ship, then the ship should have been found negligent."

8. Beard v. Ellerman Lines, Ltd., 289 F.2d at page 206.

9. Finding of Fact No. 8. The testimony of the ship's third mate relating to his cautioning against making "big slings" follows in part:
Direct Examination: Notes of Testimony, pages 77–78:

"Q. Prior to the time that they discharged the walking-boards which fell were you on the deck at No. 2 hold talking with a man from the stevedoring company?
"A. Yes, just before.
"Q. Do you know what his name was?
"A. I could not say, but he was the hatch foreman for the after part of hatch No. 2.
* * * * *
"Q. Did you have a conversation with this man from the stevedoring company while you were there?
"A. Yes.
"Q. What were you discussing?
"A. First he asked me for slings.
"The Court. First he asked you?
"The Witness. For slings.
"The Court. For slings.
"The Witness. Yes. I bring him sling and put them on deck. I call his attention, I ask him, 'That is all right?' He look. Don't say no. Then I look in the hatch when they make the slings for walking boards. Then I said to him, 'Don't make them big slings because something might be could be happen and broken.' Then he answered to me, 'I am

hazardous condition.[10] The District Court's failure to apply the principle stated is reversible error. Knox v. United States Lines Company, 294 F.2d 354, 357 (3 Cir. 1961); Beard v. Ellerman Lines, Ltd., 289 F.2d 201, 206 (3 Cir. 1961), rev'd on another issue, sub nom. Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962).[11]

There remains for disposition the contention that the District Court failed to apply proper legal standards in premising its determination that the ship was not made unseaworthy by the stevedore's negligent conduct on the ground that the ship's equipment, viz., the manila ropes used in making up the slings, "was reasonably fit for its intended use."

Libellants contend that the sub-standard constructed draft—assembling two piles or tiers of plywood boards 2½ to 3 feet high *side by side*—when placed in the slings created defective equipment for use in discharging the cargo and that under the doctrine of Rogers v. United States Lines, 347 U.S. 984, 74 S.Ct. 849, 98 L.Ed. 1120 (1954) and Alaska Steamship Co., Inc. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954) the vessel became unseaworthy. In the cases cited it was held that when a stevedore brings aboard ship defective equipment which causes an accident the ship is made unseaworthy. Libellants urge that no valid distinction can be made between a stevedore's use of defective equipment which he brings aboard the ship and his fashioning of defective equipment to perform his work after he arrives aboard ship.

The ship and the stevedore dispute this contention and say in substance that the stevedore's negligent use of the ship's fit equipment does not make the ship unseaworthy. They cite in support of their view Puddu v. Royal Netherlands Steamship Company, 303 F.2d 752 (2 Cir. 1962), cert. den. 371 U.S. 840, 83 S.Ct. 67, 9 L.Ed.2d 75;[12] Billeci v. United States, 298 F.2d 703 (9 Cir. 1962);[13] Arena v. Luckenbach Steamship Company Inc., 279 F.2d 186 (1 Cir. 1960), cert.

---

the foreman here and I know what I am doing.'"

Cross Examination: Notes of Testimony, page 81:

"Q. And did you have any other conversation until you got to discussing the size of the sling load or draft?

"A. Yes.

"Q. What did you say?

"A. I just said to him, *'Don't make too big sling.'*

"Q. *By sling you mean a big sling load, don't you?*

"A. Yes." (emphasis supplied)

10. It is apparent that the District Court treated the third mate's comments to the stevedore's foreman as merely relating to the issue of "exercise of control", and nothing more.

11. In Gutierrez v. Waterman Steamship Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963) where the critical issue was presented "as to the shipowner's liability for his torts which have impacts on shore", the Supreme Court approved the principle applied by the District Court that a vessel is liable in negligence in allowing cargo to be unloaded in defective bagging "when it knew or should have known that injury was likely to result."

12. In *Puddu,* a stevedore was injured when a boom, part of the ship's equipment, buckled and broke. The District Court found that the ship was seaworthy on the ground that the boom itself was non-defective and the accident was occasioned solely by the negligent conduct of the stevedores in placing "unusual and dangerous stress on the boom." Implicit in the Second Circuit's affirmance of this finding on the ground that it was not "clearly erroneous" is the holding that a stevedore's negligence does not make a ship unseaworthy.

13. In Billeci a winch fell out of a gear and became free-wheeling, due to the negligence of stevedores, causing a hatch section which had been raised but a few feet to simultaneously drop and swing to the port side where it skidded along the structure of the ship until it struck the libellant. Faced with this factual pattern the Ninth Circuit held 298 F.2d at pages 705, 706: "[T]he shipowner's warranty of seaworthiness does not extend to a negligent use by longshoremen of seaworthy appliances."

den. 364 U.S. 895, 81 S.Ct. 222, 5 L.Ed.2d 189.[14]

In Crumady v. The Joachim Hendrik Fisser, 249 F.2d 818, 820–821 (1957), rev'd on other grounds, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959)[15], we held, on our fact-finding that the ship's equipment was not unseaworthy prior to its negligent use by the stevedore, that the stevedore's negligence did not make the ship unseaworthy.

Four years later, in Knox v. United States Lines Company, we remanded for trial "the issue of possible unseaworthiness caused by the [stevedore's] manner of breaking down the stowage." In doing so we referred to Holley v. The Manfred Stansfield, 186 F.Supp. 212 (D.C.E.D. Va.1960) as "a case not significantly different from the present case." 294 F.2d 358, 359. In Holley it was held that a ship became unseaworthy when a longshoreman negligently created an overhang of solidified potash which later fell and killed him.

■ In Knox there had been a jury finding that the stowage was seaworthy *prior* to the commencement of the stevedore's breaking-down operation; here it is undisputed that the ship's equipment— the manila ropes—was fit for its intended use. Unless a valid distinction can be drawn between a stevedore's unsafe[16] breaking-down of a seaworthy stowage and its negligent (unsafe) use of a ship's equipment, a logical projection of our holding in Knox would seem to indicate our subscription to the view that a stevedore's negligent or unsafe use of a ship's seaworthy equipment makes the ship unseaworthy.

It compels notation that the Court of Appeals for the Fourth Circuit in Scott v. Isbrandtsen Company, Inc., 327 F.2d 113 (1964) has construed Knox as holding that a longshoreman's negligent method of discharging cargo makes the ship unseaworthy.

In Scott it was said (327 F.2d pp. 125–126):

"In this circuit it is no longer open to question that evidence of the negligence of the longshoremen themselves in the performance of the ship's work and *in their method of operation* may present a factual issue as to whether an unseaworthy condition is created for which the shipowner may be held liable for injury to a longshoreman resulting from such condition. This is true even though the condition be transitory and without knowledge of the ship's officers. Furthermore, contrary to defendant's argument, in determining unseaworthiness no significance attaches to the fact that no one complained of the alleged unsafe condition."

14. In Arena a longshoreman was injured when a loading board tipped and spilled rolls of paper into the hold of the ship. It was contended on appeal from the District Court's direction of verdict in defendant's favor that the board was used by stevedores in an unsafe manner and that this alone rendered the ship unseaworthy. The First Circuit rejected this argument, holding among other things that "the board was not defective simply because the longshoremen who loaded it neglected to do so in a proper fashion."

15. The Supreme Court reversed on the ground that the District Court's fact-finding that the ship's equipment was unseaworthy prior to its use by the stevedore was not "clearly erroneous", and that the stevedore's negligence "did no more than to bring into play the unseaworthy condition of the vessel." 358 U.S. 427, 79 S.Ct. 445, 448, 3 L.Ed.2d 413.

16. In Italia Societa per Azioni di Navagazione v. Oregon Stevedoring Company, Inc., 84 S.Ct. 748, it was stressed that in Ryan Stevedoring Co. v. Pan Atlantic Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (the landmark case in which it was established that a stevedore who enters into a service agreement with a shipowner is liable to indemnify the owner for damages sustained as a result of the stevedore's improper stowage of cargo) that the basis of the injured longshoreman's recovery against the ship had been the failure of the stevedore "to perform safely, a basis for liability including negligent and nonnegligent [acts] alike."

It is interesting to observe that in Scott the Court noted (327 F.2d p. 124):

"The obvious trend of the Supreme Court decisions is toward providing ever increasing protection for crewmen, longshoremen and even others employed by independent contractors who may be called upon to work aboard vessels."

The Supreme Court has not yet spoken on the precise question as to whether a stevedore's negligence in the use of ship's seaworthy equipment makes the ship unseaworthy but doctrinal trends evidenced in its decisions since Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) indicate that it would answer the question in the affirmative.

In Reed v. The Yaka, 373 U.S. 410, p. 413, 83 S.Ct. 1349, p. 1352, 10 L.Ed.2d 448 (1963), the Supreme Court said:

"In Seas Shipping Co. v. Sieracki, 328 U.S. 85, [66 S.Ct. 872, 90 L.Ed. 1099] (1946), we held that a shipowner's warranty of seaworthiness extended to a longshoreman injured while loading the ship, even though the longshoreman was employed by an independent contractor. In doing so, we noted particularly the hazards of marine service, the helplessness of the men to ward off the perils of unseaworthiness, the harshness of forcing them to shoulder their losses alone, and the broad range of the 'humanitarian policy' of the doctrine of seaworthiness * * *."

In Mitchell v. Trawler Racer, Inc., 362 U.S. 539, p. 549, 80 S.Ct. 926, p. 932, 4 L.Ed.2d 941 (1960), the Court after quoting extensively from Sieracki said:

"From that day to this, the decisions of this Court have undeviatingly reflected an understanding that the owner's duty to furnish a seaworthy ship is absolute and completely independent of his duty under the Jones Act to exercise reasonable care. Pope & Talbot, Inc., v. Hawn, 346 U.S. 406 [74 S.Ct. 202, 98 L.Ed. 143]; Alaska Steamship Co. v. Petterson, 347 U.S. 396 [74 S.Ct. 601, 98 L.Ed. 798]; Rogers v. United States Lines, 347 U.S. 984 [74 S.Ct. 849, 98 L.Ed. 1120]; Boudoin v. Lykes Bros. S.S. Co., 348 U.S. 336 [75 S.Ct. 382, 99 L.Ed. 354]; Crumady v. The J. H. Fisser, 358 U.S. 423 [79 S.Ct. 445, 3 L.Ed.2d 413]; United New York and New Jersey Sandy Hook Pilots Ass'n. v. Halecki, 358 U.S. 613 [79 S.Ct. 517, 3 L.Ed. 2d 541]."

In Morales v. City of Galveston, 370 U.S. 165, pp. 170–171, 82 S.Ct. 1226, pp. 1229, 1230, 8 L.Ed.2d 412 (1962), the Supreme Court said:

"A vessel's unseaworthiness might arise from any number of individualized circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit. *The method* of loading [or unloading] her cargo, or the manner of its stowage, might be improper. (citing cases). *For any or all of these reasons, or others,* a vessel might not be reasonably fit for her intended service." (emphasis supplied)

■ In the instant case the District Court found negligent the stevedore's method of assembling two piles of plywood boards "side by side" to make a sling load. Whether the operation is regarded as "stowage" of the piles of boards as part of the discharge process, or the construction of a "draft", or as the mere use of the ship's equipment—the manila ropes—the fact remains that the stevedore "failed to perform safely, a basis for liability including negligent and nonnegligent conduct alike", and that made the ship unseaworthy.[17]

For the reasons stated the Decree of the District Court dismissing the libel and the impleading petition will be vacated and the cause remanded with directions to proceed in accordance with this opinion.

17. Ibid.