Louis ANTOINE, Appellant,

v.

LAKE CHARLES STEVEDORES, INC., Lykes Brothers Steamship Company, Inc. and the Travelers Insurance Company, Appellees.

No. 23400.

United States Court of Appeals Fifth Circuit.

April 13, 1967.

---

James A. Smith, Lake Charles, La., for appellant.

Meredith T. Holt, Lake Charles, La., William E. Wright, New Orleans, La., for appellees. Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., Cavanaugh, Brame, Holt & Woodley, Lake Charles, La., of counsel.

Before GEWIN and GOLDBERG, Circuit Judges, and SPEARS, District Judge.

SPEARS, District Judge:

Appellant, employed by Lake Charles Stevedores, was one of a gang of longshoremen loading rice on board a vessel belonging to Lykes Brothers Steamship Company. Spotlights located up above the hold on each side of the winchmen were being used, because it was at night. No flagman was on duty. There were twelve men working in the hold and they were divided into two crews of six men each. One crew was unloading and stacking the rice on the onshore side, the other crew was working on the opposite side. Appellant was in the crew working on the offshore side. He was taking a short rest and waiting for the next load to arrive. The winchman was busy watching the load then being lowered and didn't see appellant, who, being unable to get clear, was pinned against the bulkhead of the ship, and sustained the injury for which he seeks damages.

The loading had been contracted to the stevedores. The district court rejected the contention that the absence of a flagman on duty made the ship unseaworthy, and found that there was no defective equipment aboard the vessel; that there was no breakdown or functional failure of any equipment; that the cause of the accident was the concurrent negligence of appellant and his co-worker; and that any finding of unseaworthiness would necessarily have to be premised on an unsafe place to work of only a few seconds duration. He then concluded that he was prohibited by the language of this Court in Neal v. Lykes Bros. Steamship Company, 306 F.2d 313 (5th Cir. 1962), and McQuiston v. Freighters and Tankers Steamship Company, 327 F.2d 746 (5th Cir. 1964), from characterizing "operational negligence" as "unseaworthiness", and dismissed the case. Antoine v. Lake Charles Stevedores, Inc., 249 F.Supp. 290 (W.D.La.1965). We agree that "(I)n the factual context of the instant case there can be no recovery", and, therefore, affirm the judgment, but since we do not believe that this Court has ever expressed itself, until now, in the specific area of "operational negligence", we do not agree that the district court was bound in that regard by any language in either *Neal* or *McQuiston*.

This is still another in the growing number of cases dealing with claims against shipowners for alleged unseaworthiness of their vessels. While, as the district court says, the obvious trend

is toward providing ever-increasing protection for crewmen, longshoremen, and even those employed by independent contractors who may be called upon to work aboard vessels, it does not appear that the Supreme Court has gone so far as to hold that the shipowner is liable for "instantaneous unseaworthiness", based upon the very act of a fellow longshoreman which causes the injury. Titus v. The Santorini, 258 F.2d 352 (9th Cir. 1958), and Billeci v. United States, 298 F.2d 703 (9th Cir. 1962).[1]

The distinction drawn by the Ninth Circuit between cases like *Titus* and *Billeci,* and those such as Beeler v. Alaska Aggregate Corp., 336 F.2d 108 (9th Cir. 1964); Blassingill v. Waterman Steamship Corporation, 336 F.2d 367 (9th Cir. 1964); and Huff v. Matson Navigation Company, 338 F.2d 205 (9th Cir. 1964), appears to be that even though liability on the ground of unseaworthiness attaches if the negligent act has terminated, and an appliance has been left in an unsafe condition, it does not attach if the injury was sustained by the negligent use of a seaworthy appliance at the very moment of the injury.

▮▮▮ As noted, the district court found, among other things, that the cause of the accident was the concurrent negligence of appellant and his co-worker. Of course, appellant's contributory negligence would not be a defense, although it could be applied in mitigation of damages. Seas Shipping Company v. Sieracki, supra, footnote 1. However, the record supports the conclusions reached by the district court that the negligent act of the co-worker was only

of a few seconds duration, and that the accident came at a time when a flagman was not needed.

In Neal, supra, the longshoreman was injured when a load of steel was being lifted from the hold by winches, and was being discharged into open gondola railroad cars. As the workers were waiting to get a car into position, one end of the load was rested on the inshore rail of the vessel adjacent to number 3 hatch. When an attempt was later made to raise the load, preparatory to transferring it into the car which had been moved into position, one end of the load somehow became entangled on a cleat on the rail. The claimant, one of two winch operators, without receiving any instructions at all, left his position and walked to the load, attempting to free it by shaking it with his hands, whereupon, the gang foreman ordered him to move away. However, while the claimant was walking to a position of safety, the gang foreman began operating one of the winches which caused the load to come loose from the cleat on the rail and swing around, striking the claimant.

It is apparent, of course, that there is a factual similarity between *Neal* and the case presently before us. Moreover, in each case there was no defective equipment; the appurtenance involved was reasonably fit for its intended use; the injury sustained at the time of the negligent use of the appliance; the fact-finder [2] concluded that the co-worker was negligent, but that the vessel was not unseaworthy; and in *Neal* this court upheld the judgment against

---

1. In Ferrante v. Swedish American Lines, 331 F.2d 571 (3rd Cir. 1964), the Court was of the opinion that although the Supreme Court has not yet spoken on the precise question as to whether a stevedore's negligence in the use of a ship's seaworthy equipment makes the ship unseaworthy, doctrinal trends evidenced by its decisions since Seas Shipping Company v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, reh. den. 328 U.S. 878, 66 S.Ct. 1116, 90 L.Ed. 1646, indicate that it would answer the question in the

affirmative. It should be borne in mind, however, that the *method* used by the longshoremen in Ferrante was not in accordance with standard procedure, and there was a time lag between the negligent act and the injury.

2. In United States Lines Company v. Williams, 365 F.2d 332 at 334 (5th Cir.1966), this court said that unseaworthiness is ordinarily a question of fact for jury or fact-finder resolution, although it may be, or becomes so, as a matter of law on resolution of subsidiary findings.

the claimant, citing *Billeci*,[3] supra, as an analogous authority. However, the *Neal* opinion does not undertake to declare when or under what circumstances the negligent use of seaworthy equipment will render the vessel unseaworthy.

Also, as we read *McQuiston*, it teaches nothing which sheds any light on the question. There apparently was no evidence concerning negligence on the part of the claimant or his fellow workers. The only unseaworthiness claim, as the district court notes, was that the shovel being used by the longshoreman was of too great a capacity, and that this caused him to wrench his back, but there was a total lack of evidence in the record to support that contention.

It would serve no useful purpose to rehash the many decisions by the Supreme Court and the various Courts of Appeals since *Sieracki*, supra. The district court has analyzed many of the authorities, and pointed out the contrasts between some of the holdings of the Third and Ninth Circuits,[4] on the one hand, and those of the First and Second Circuits,[5] on the other. While the difference in the philosophy of these cases illustrates a few of the ramifications referred to by the district court, none of them is exactly in point with *Titus, Billeci, Neal* or this case. And although it would appear at first blush from *Huff*[6] that there may be a conflict in the Ninth Circuit, the majority there said, 338 F.2d 205 at 216, footnote 14, that they did not ignore either *Billeci* or *Titus*, but felt that under the facts of that particular case, "an interval comparable to the brief one in Beeler separated the negligent act and the injury".

█ It may be "slicing the law too fine",[7] and at some future time the Su-

---

3. In Billeci, 298 F.2d at page 705, the Court said: "It is well settled that a shipowner owes a non-delegable duty to furnish a seaworthy vessel and that this duty extends to employees of stevedoring companies; that the warranty of seaworthiness extends to appliances appurtenant to the vessel and does not end with supplying the appliances but also includes keeping them in order, and the exercise of due diligence does not relieve the owner of his obligation to furnish adequate appliances; that this duty applies to an unseaworthy condition which may be only temporary; and that the shipowner is not relieved of these responsibilities by turning control of loading or unloading over to a stevedore company.
   "On the other hand, while the duty is absolute, it is a duty only to furnish a vessel and appliances reasonably fit for their intended use; the law does not impose upon the shipowner the burden of an insurer or the duty to provide an accident-proof ship; and the shipowner's warranty of seaworthiness does not extend to a negligent use by longshoremen of seaworthy appliances".

4. Ferrante v. Swedish American Lines, supra, footnote 1; Spann v. Lauritzen, 344 F.2d 204 (3rd Cir.1965); Huff v. Matson Navigation Company, 338 F.2d 205 (9th Cir.1964); cert. den. 380 U.S. 943, 85 S.Ct. 1026, 13 L.Ed.2d 963.

5. Arena v. Luckenbach Steamship Company, 279 F.2d 186 (1st Cir.1960), cert. den.

364 U.S. 895, 81 S.Ct. 222, 5 L.Ed.2d 189; Puddu v. Royal Netherlands Steamship Company, 303 F.2d 752 (2nd Cir.1962), cert. den. 371 U.S. 840, 83 S.Ct. 67, 9 L.Ed.2d 75, reh. den. 371 U.S. 917, 83 S.Ct. 258, 9 L.Ed.2d 176.

6. The majority of a panel of this court in Deffes v. Federal Barge Lines, Inc., 361 F.2d 422 (5th Cir.1966), dealing with a defective marine leg permanently attached to the dock but used in unloading grain from a barge, recently aligned itself with the philosophy of the Third and Ninth Circuits, as espoused in cases such as Spann and Huff. (See footnote 4, supra.)

7. In Titus supra, 258 F.2d at page 354, the court said that it was not convinced "that the instantaneous acts of a fellow longshoreman rendering the equipment unseaworthy and injury to the longshoremen are chargeable to ship as unseaworthy". "If this be characterized as slicing the law too fine", it continued, "one may counter with an illustration. Suppose a longshoreman throws a match in a bucket of gasoline on the deck. The result is an explosion which simultaneously and immediately renders the ship unseaworthy and injures the second longshoreman. Would the ship be held on its implied in law warranty of seaworthiness for the injury to the second longshoreman?" That court, in footnote 6, calls attention to the foregoing concept as expressed by Judge Learned Hand in Grillea v. United States,

preme Court may say that a stevedore's negligence in the use of the ship's seaworthy equipment, at the moment of the injury, will make the ship unseaworthy,[8] but for the present we hold that the operational negligence of the employee of an independent contractor, occurring at the moment of injury to a co-worker, does not render the vessel unseaworthy.

Affirmed.

232 F.2d 919 at 922 (2nd Cir.1956), wherein it was recognized that the time element is a factor in determining the question of unseaworthiness. In Grillea the court felt that even though the libellant and his companion had been those who laid the wrong hatch cover over the "pad-eye" only a short time before he fell, enough time had elapsed to result in unseaworthiness. As the court said in Billeci, 298 F.2d 703 at 706, of Grillea: "The accident occurred *after* the hatch cover had been misplaced—not in the act of misplacing it or in the negligent use of an appliance at the time of injury".

8. See footnote 1, supra.