George SATCHELL, Appellant,

v.

SVENSKA OSTASIATISKA KOMPANIET, Appellee.

No. 11035.

United States Court of Appeals Fourth Circuit.

Argued March 9, 1967.

Decided Oct. 16, 1967.

Harvey Goldstein, Goldstein & Sterenfeld, New York City (Ellenson & Fox, Newport News, Va., on brief), for appellant.

Bernard G. Barrow, Norfolk, Va. (Walter B. Martin, Jr., and Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief), for appellee.

Before SOBELOFF, J., SPENCER BELL * and WINTER, Circuit Judges.

SOBELOFF, Circuit Judge:

An action, grounded in both negligence and unseaworthiness, was brought by George Satchell, a longshoreman, to recover damages for personal injuries sustained by him in the course of his employment, loading tobacco, aboard the defendant's vessel. The question framed by the parties to this appeal is whether the District Court erred in instructing the jury on the issue of unseaworthiness.

Cases of tobacco were lowered by winch, first through the weather deck and then through the upper 'tween deck, only one of whose three sections of hatch covers was removed to create an opening approximately eight to twelve feet wide. The cases, loaded four at a time, were gripped by hooks from a running line attached to the winch; the total width of the load was about four and one-third feet. Steel beams fastened by pins to U-shaped sockets in the hatch coaming supported the sections of hatch cover remaining in place. Satchell, together with other longshoremen, had been working in the hold for forty-five minutes, and a number of cases had been lowered. After one such lowering, as the unburdened hooks were being raised, one or more of them caught the steel beam adjacent to the hatch opening of the upper 'tween deck. The beam was wrenched from its sockets and, together with several hatch covers, cascaded into the hold, striking and injuring Satchell.

The crew foreman testified that it was customary to load cargo through a partially opened hatch, that removal of only one of three sections of hatch covers was sufficient to load the tobacco cases, and that before the accident the loading had proceeded without incident. On the other hand, the hatch boss testified that the men working in the hold could not completely control the ascending hooks as they passed through the hatch openings, which were several feet above their heads, and that while they could steady the hooks before the beginning of their rise, it was not unusual or unexpected for the hooks to pick up a swing as they left the hold. The hatch boss also testified that the beams had been grazed several

* Judge Bell participated in the hearing but died before the opinion was prepared.

times during the loading on the evening of the accident.

At the close of trial, Satchell submitted an instruction to the effect that if the jury finds that the beam was lifted out of its sockets, the verdict must be for the plaintiff. The District Court denied this request and, instead, instructed the jury that:

"If you believe by a fair preponderance of the evidence that no pin or bolt was in the beam and if the absence of such pin or bolt was a proximate cause of the accident, then the vessel was unseaworthy as a matter of law and the defendant is liable. On the other hand, if you believe by a fair preponderance of the evidence that a pin or bolt was in the beam and that the beam was safely lashed, locked or otherwise secured, and if you further believe from the evidence that the pin or bolt sheared by reason of excessive force applied against it and that such event constituted a proximate cause of the accident, then you may consider this evidence in determining whether the vessel was or was not seaworthy, that is to say, in determining whether the vessel and its equipment was reasonably fit for its intended use."

The jury returned a general verdict in favor of the defendant.

Satchell contends that the above quoted portion of the instruction was prejudicial to him. He maintains that "there was no possible difference whether the pins were missing, permitting the beam to be lifted, or they were inadequate to secure the beam to lock it in the slots and avert just such an accident as did occur." Under either hypothesis, he asserts, he was entitled to a mandatory instruction on unseaworthiness.

■ Satchell's argument is not without force. If a portion of a ship's equipment breaks under normal use, the logical inference is that the equipment was defective, thereby rendering the vessel unseaworthy, Petterson v. Alaska S. S. Co., 9 Cir., 205 F.2d 478, aff'd, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954).

The immediate cause of the accident in our case was the shearing of the pins used to secure the steel beams. Unlike *Petterson,* however, the pins may not have been intrinsically defective, but they may merely not have been manufactured to withstand the force actually applied. Whether their inability to withstand the force generated by the winch rendered the vessel unseaworthy was a question to be resolved by the jury. We are bound by its determination.

However, we think that before we can affirm the judgment, the record should be amplified with respect to a significant, and possibly controlling, factual matter not sufficiently explored at trial. The winch operator, who from his perch could not see into the hold, testified that when he received a cut-off signal from the gangwayman, who served as his "eyes," he also felt the cable tighten (presumably upon engaging the beam) and he at once cut off the winch. Immediately thereafter he heard the noise caused by the beam and hatch covers hitting the hold below. No testimony was offered, nor was any elicited on cross-examination, concerning the presence or absence of a circuit breaker on the winch.

■ Circuit breakers are manually set mechanical devices which automatically stop the operation of the winch and release the stress on the line when the gear is subjected to excessive strain. It is a sufficiently common observation to warrant our taking notice, not as an adjudicative fact but for the limited purpose of instituting further inquiry, that circuit breakers are generally installed on cargo-loading winches. Without knowing whether the winch was equipped with a circuit breaker or, if so equipped, what load it was set to withstand, the jury could not intelligently decide whether the operation was negligent or the vessel unseaworthy. Had evidence been adduced on this point, it might have justified a jury finding that since it was foreseeable that the hooks might engage the beam, failure to provide a circuit breaker or failure to set it at a point sufficiently low to reduce the possibility of accidents

established negligence or rendered the vessel unseaworthy. The District Court, in its instruction to the jury, posited the alternative that the pins might have been sheared by "excessive force" exerted by the winch. It was therefore imperative that the jury be advised of a commonly employed method of preventing the build-up of excessive force.

Circuit breakers are utilized for the very reason that they react instantaneously. Reliance need not then be placed upon the winch operator, who must await a signal from the gangwayman and whose reaction time can never be as speedy as that of an automatic switch. Failure to install or properly set a circuit breaker could well increase the danger of accident. Inquiry in this regard is therefore inextricably intertwined with the questions of negligence and unseaworthiness. See Crumady v. The J. H. Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959).[1]

In the interest of justice we remand the case with directions to inquire into the practices of the industry with respect to the installation and operation of circuit breakers in the circumstances of this case, and to determine whether on the occasion in question the installation or absence of a circuit breaker or the method of its operation met the standard prevailing in the industry. The court shall allow the judgment for the defendant to stand unless the plaintiff can make a satisfactory showing to the District Court that there is a triable issue of fact regarding the circuit breakers. If such an issue appears, the court shall grant a new trial.

Case remanded with instructions.

[1] The Supreme Court has recently reaffirmed the continuing vitality of the principles first enunciated in *Crumady* in its per curiam reversal of the Third Circuit. in Mascuilli v. United States, 387 U.S. 237, 87 S.Ct. 1705, 18 L.Ed.2d 743 (1967).

In *Mascuilli*, the undisputed facts were that a longshoreman employed in loading the defendant's vessel was struck and killed by a vang guy, which lashed back when the port shackle, which was subjected to a strain greatly in excess of that which it was designed to withstand, snapped. Although the winches were outfitted with manually resettable overload circuit breakers, examination after the accident revealed that they had not operated because they were set at a point much higher than the equipment was designed to withstand.

The District Court entered a pre-trial order resolving the issue of liability in the longshoreman's favor, but the Third Circuit vacated the judgment and remanded for trial on the ground that unresolved genuine issues of material fact existed concerning the origin and extent of the excessive strain, who caused it, and who bore the responsibility of preventing it. 313 F.2d 764 (1963). The case was tried before another District Judge, who found that the sole cause of the accident was the failure of the longshoreman to follow proper loading procedures. No consideration was given to the failure of the circuit breaker to shut off the power supply when the strain exceeded the safety limit of the gear. The Third Circuit affirmed.

In a per curiam opinion, the Supreme Court granted certiorari and summarily reversed, merely citing *Crumady* and Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944), which first established the doctrine that operating negligence is subsumed under unseaworthiness.