Henry **VARLACK**

v.

**MITSUI O.S.K. LINES, K.K.**

v.

**LUCKENBACH STEAMSHIP CO., Inc.**

Ernest **APPLING**

v.

**MITSUI O.S.K. LINES, K.K.**

v.

**LUCKENBACH STEAMSHIP CO., Inc.**

**Civ. A. Nos. 44046, 44047.**

United States District Court,
E. D. Pennsylvania.

Nov. 10, 1971.

Avram G. Adler, Philadelphia, Pa., for plaintiffs.

Arnold P. Minicozzi, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

This is a consolidated action for damages arising out of an accident on board the S. S. Sacramento Maru. The plaintiffs have moved for summary judgment, pursuant to Fed.R.Civ.P. 56, on the issue of liability. They claim that the accident resulted from the unseaworthy condition of the ship.

On August 7, 1967, plaintiffs were employed as longshoremen by third-party defendant, Luckenbach Steamship Co., Inc., to load and unload cargo aboard the S. S. Sacramento Maru, a ship owned and operated by defendant, Mitsui O.S.K. Lines, K.K. Henry Varlack was the hatch foreman at the number one hatch, and Ernest Appling was a deckman in his crew. Varlack's crew had finished unloading by early afternoon and were ready to begin loading.

At approximately 2 P.M. Charles Kelly, the head foreman, ordered the number one hatch crew to bring a fork lift truck aboard. He wanted them to use it to assist the other crews which had not yet finished unloading their assigned cargo. Varlack objected to lifting the truck with the house fall and boom rigging that they were using to load and unload cargo, unless a counterweight was removed. Kelly, however, insisted that the equipment, as rigged, was sufficient to hoist the fork lift safely without removing the weight.

The crew attached the truck to the rigging and lifted it to the ship. While the fork lift hovered a few feet above the deck the preventer wire on the rigging snapped. The wire struck Appling who fell into Varlack.

The preventer wire was rated to safely withstand 5 tons of stress. The cargo which they were moving that day weighed approximately 1.5 tons; the fork lift weighed 8500 pounds (4.25 tons). It is undisputed that when a house fall and boom rigging is used to lift cargo, the stress on the preventer wire is greater than the actual weight of the object lifted. According to the affidavit of Captain K. R. Mistry, who examined the rigging after the accident, a 4-ton load placed 9.5 tons stress on the wire.

■ Plaintiffs claim that the unseaworthy condition of the ship's equipment at the time of the accident caused their injuries. The protection of unseaworthiness has been widely expanded in recent years until it has become a principal vehicle for personal injury recovery in admiralty cases. *See* G. Gilmore & C. L. Black, Jr., The Law of Admiralty § 6–38 (1957). This protection applies to stevedores working for an independent contractor who are engaged in the loading and unloading of cargo. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). The conditions can be transitory and not a permanent defect in the ship. Mitchell v. Trawler Racer, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). Unseaworthiness may arise from any number of individualized circumstances, including an improper method of loading or unloading cargo. Morales v. City of Galveston, 370 U.S. 165, 82 S.Ct. 1226, 8 L.Ed.2d 412 (1962).

In the present case, the longshoremen attempted to raise a fork lift truck aboard ship by means of a house fall and boom. The equipment rigged in this manner was sufficient to move the cargo which was to be handled that day. When the fork lift was being hoisted aboard to assist in the handling of the cargo,

the actual weight, or stress, on the wire was twice the test strength of the wire due to the multiplier effect of the rigging. In essence, they were attempting to lift the truck with equipment which did not have the capacity to safely lift the weight.

Defendants claim that seaworthiness refers only to the suitability of the equipment in relation to its intended use. They cite Satchell v. Svenska Ostasiatiska Kompaniet, 385 F.2d 76 (4 Cir. 1967), for the proposition that the failure of gear improperly taxed beyond its intended capacity is not unseaworthiness. In *Satchell*, a longshoreman was injured by a falling beam which was pulled from its sockets by hooks being raised through a hatch adjacent to the beam. The court held that the ship was not unseaworthy if the pins holding the beam were not manufactured to withstand the force actually applied when the hooks hit the beam. Defendants assert that the ship, likewise, was not unseaworthy when the wire broke attempting to hoist a load whose actual weight was greater than the weights intended to be lifted by the rigging that day.

The present case is clearly distinguishable from *Satchell*. In *Satchell* the equipment that failed was accidentally struck by the hooks and subjected to an exceptional force. The stevedoring crew in the present case intentionally used the equipment to lift the weight which was beyond its tested capacity.

■ Defendants' view of the effect of intended use on unseaworthiness is mistaken. It is not necessary that a ship's equipment be inherently defective for the ship to be in an unseaworthy condition. A ship whose equipment is perfectly operable under certain circumstances may be *pro tanto* unseaworthy if that equipment is adjusted or used in a manner which is unsafe for the work at hand. Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); Ferrante v. Swedish American Lines, 331 F.2d 571 (3 Cir. 1964); Thompson v. Calmar Steamship

Corp., 331 F.2d 657 (3 Cir. 1964). The Third Circuit, in *Ferrante*, held that even if the ship's equipment was fit for its intended use, a stevedore's negligent or unsafe use of a ship's seaworthy equipment makes the ship unseaworthy. *See* Thompson v. Calmar Steamship Corp., *supra*. The employment of the rigging to lift the truck, which exceeded the test strength of the wire by nearly five tons, was clearly an unsafe use of the equipment.

It makes no difference that the rigging was originally intended to move cargo and the fork lift is not cargo. In *Thompson*, a ship was held to be unseaworthy when its lines, winch and engine were used to move railroad cars into position to unload, because it was an unsafe method of operation. If the actual use of the equipment is an unsafe use, it does not matter that it is an unexpected one. When the stevedores disregarded the safe limits of the rigging and raised the fork lift truck with equipment unfit for that purpose, the ship was unseaworthy for that purpose.

Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971), does not alter the standard of unseaworthiness that is applicable in the instant case. In *Usner*, a longshoreman was injured when a fellow worker, who was operating a winch, lowered a sling too far and too fast. The Supreme Court held that the isolated, personal negligent act of a fellow worker does not create a condition of unseaworthiness. *Usner* involved the instantaneous negligence of a stevedore in operating equipment that was fit for the purpose for which it was being used. The present case involves a ship whose equipment was in a *pro tanto* unseaworthy condition because the equipment used to raise the truck was unsafe for the purpose.

The unsafe use of equipment was sufficient to render the S. S. Sacramento Maru *pro tanto* unseaworthy at the time of the accident even though it was fit for the particular purpose for which it was rigged. Thus, since there is no genuine issue as to any

material fact, plaintiffs are entitled to summary judgment as a matter of law on the issue of liability, and the case may now proceed to the assessment of damages.