Robert Wayne **PATTERSON**

v.

**ESSO JAMESTOWN and Esso, Inc.**

No. 780.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Oct. 20, 1967.

William P. Rutledge, Kierr & Gainsburgh, New Orleans, La., for plaintiff.

James L. Schupp, Jr., Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., for defendant, Humble Oil & Refining Co.

John S. White, Jr., Kennon, White & Odom, Baton Rouge, La., for intervenor, Maryland Cas. Co., and respondent-impleader, Yaun Welding & Machine Works, Inc.

G. T. Owen, Jr., Borron, Owen, Borron & Delahaye, Baton Rouge, La., for third-party petitioner, Yaun Welding & Machine Works, Inc.

WEST, District Judge:

This is a suit for damages for personal injuries sustained by plaintiff, Robert Wayne Patterson, as a result of the alleged unseaworthiness of the defendant vessel, "ESSO JAMESTOWN," and/or the alleged negligence of the vessel's owner, the defendant Humble Oil and Refining Company. (The original defendant, Esso, Inc., was dismissed and the proper defendant, Humble Oil and Refining Company, substituted in its place. Plaintiff, at the time of the accident, was employed by Yaun Welding and Machine Works, Inc., an independent contractor employed by Humble to perform certain work aboard the JAMESTOWN. The JAMESTOWN upon arriving at the port of Baton Rouge, was experiencing difficulty with one of her main shaft bearings, and in order to determine the extent of the difficulty, members of the ship's crew rigged a chain fall above the bearing and lifted the top half of the bearing, called the bearing cap, off of the shaft about one-quarter to one-half inch, for the purpose of inspecting the babbitt insert in the bearing, After concluding that the babbitt surface of the bearing had been damaged and that it would be necessary to completely remove both halves of the bearing from the shaft in order to perform the required work, Yaun was called upon, as an independent contractor, to perform this work. As a result of being thus employed, Yaun sent a crew of four men, including plaintiff, aboard the vessel to remove and repair the damaged bearing. While the evidence is in conflict in many respects concerning the position of the bearing when plaintiff first arrived aboard, it is nevertheless the opinion of this Court that the credible evidence preponderates in favor of the conclusion that when plaintiff first arrived aboard the vessel, the top half of the bearing was suspended by a chain fall directly over the shaft, about one-quarter to one-half inch above its usual working site. Members of the ship's crew had rigged the chain fall, unbolted the bearing cap, and raised it, by use of the chain fall, to that position. This bearing cap weighed some 500 pounds or more. It was after the bearing cap had been unbolted and raised by the ship's crew that their inspection revealed the necessity of the assistance of Yaun in making the necessary repairs to the babbitt surface of the bearing. No further work was done on the bearing or shaft by the ship's crew between the time plaintiff came aboard and the time of the accident, some three hours later. The evidence is also in conflict as to how the bearing cap was handled thereafter, but certain pertinent facts seem quite evident from the record. There is no question but that some time after the Yaun crew commenced its work, the bearing cap was moved by use of the chain fall from its original suspended position over the shaft to a position two or three feet down the shaft. This was necessary in

order to make room for the crew to remove the bottom half of the bearing. It is also certain that at some point prior to the accident the bearing cap was lowered by the chain fall and placed on top of the shaft some two or three feet from its original suspended position. It is also quite clear that at some point prior to the accident the chain fall was disengaged from the bearing cap leaving the cap resting without other support on top of the shaft. And lastly, it is established by a clear preponderance of the evidence that while plaintiff was attempting to attach a bridle or choker to the eye bolts of the bearing cap so that it could again be lifted by the chain fall, he slipped and fell and the bearing cap rolled off of the shaft, striking him and causing him injury. While plaintiff argues that the accident was caused by the negligence of Humble, the vessel owner, there is simply no evidence whatsoever to support such a position. No employee of Humble, and no member of the ship's crew, had a thing to do with placing the bearing cap, unsupported, on top of the shaft. No member of the ship's crew had anything to do with moving or touching the shaft or the bearing after the bearing cap had been first lifted from the shaft and safely suspended by the chain fall. The ship's crew turned the job over to the Yaun crew with the bearing cap safely suspended above the shaft by the chain fall. Whatever change in position of the bearing cap took place after that was the sole responsibility of the Yaun crew. There was not the slightest evidence to support a claim of negligence on the part of any member of the crew of the JAMESTOWN, and thus plaintiff's claim, insofar as it is predicated on alleged negligence of Humble or its employees must fall. But a much more serious question is presented on plaintiff's claim for damages based upon the alleged unseaworthiness of the vessel JAMESTOWN. In short it is plaintiff's contention that the placing of the bearing cap in a precarious position on top of the shaft by the Yaun crew constituted negligence on their part, and the fact that the bearing cap remained in that precarious position for some three hours prior to the accident rendered the vessel unseaworthy during that period of time. Plaintiff then concludes that since it was this alleged unseaworthy condition, i. e., the precarious position of the bearing cap on the shaft, that caused his injuries, he is entitled to recover therefor from the vessel and her owner.

When a plaintiff sues for injuries allegedly sustained as a result of an unseaworthy condition of a vessel, the burden is, of course, upon him to prove his claim by a preponderance of the evidence.

The Court concludes that plaintiff has failed to carry this burden. Plaintiff does not claim that he was injured because of any part of the ship's hull, gear, tackle, appliances or appurtenances. His only claim of unseaworthiness is based upon the contention that the Yaun repair crew, called upon by the defendant to repair a damaged bearing cap aboard the vessel JAMESTOWN, committed an act of negligence when they, the repair crew, placed the bearing cap unsupported upon the shaft of this vessel and allowed it to remain in that position for about three hours prior to the accident. Plaintiff contends that this act of negligence, which he says was committed and came to rest about three hours prior to the accident, created an unseaworthy condition, i. e., caused the bearing cap to be left in a precarious place rendering unsafe the place where the repair crew had to work, and that three hours after the act of negligence was committed and had come to rest, the plaintiff was injured as a result of the unseaworthy condition caused by the negligence.

There can, of course, no longer be any doubt that a shipowner owes a nondelegable duty to furnish a seaworthy vessel, and that this duty extends to intermediary employers who are performing a portion of the ship's work. Generally speaking this warranty of seaworthiness runs in favor of longshoremen and repairmen alike. Seas Shipping Co. v. Sieracki, 328 U.S. 878, 66 S.Ct. 1116, 90 L.Ed. 1646 (1946); Pope

and Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953). But when the unseaworthy condition is brought about by the negligence of a fellow employee of the injured repairman, then the question of when the act of negligence was committed in relation to when the accident occurred becomes important, and indeed, controlling. Antoine v. Lake Charles Stevedores, Inc., et al., 376 F.2d 443 (CA 5–1967); Robichaux v. Kerr McGee Oil Industries, Inc., 376 F.2d 447 (CA 5–1967). The conclusion of the Court in *Antoine* was:

" * * * that the operational negligence of the employee of an independent contractor, occurring at the moment of injury to a co-worker, does not render the vessel unseaworthy."

And in *Robichaux*, the Court concluded:

" * * * if there is an improper use of seaworthy equipment by the intermediary employees, resulting in injury to a worker, his claim might come squarely within the doctrine of Sieracki, supra, depending of course, upon whether the injury came at the very moment of the negligent use, or after the negligence of the fellow worker had come to rest and the equipment had been left in an unsafe condition. See Antoine v. Lake Charles Stevedores, 376 F.2d 443 (5th Cir. 1967), decided this day."

▮ *Antoine* and *Robichaux* being the latest expressions of the Appellate Court in this Circuit on the question of operational negligence are, of course, controlling in this case. As of now, at least, the law by which this Court is bound is clear, i. e., if an employee of an intermediary employer is injured as a result of operational negligence of a co-employee occurring at the time of the accident, such operational negligence does not create an unseaworthy condition for which the shipowner can be held liable. But if the negligence of the fellow worker had come to rest, and as a result of the negligence the ship's gear or equipment was left in an unsafe condition causing injury to the plaintiff, the ship and its owner may be liable for injuries resulting from the unseaworthy condition thus created. When the negligence occurred in relation to the happening of the accident is, of course, a question of fact. While there is conflicting evidence on many of the salient points involved in this case, this Court finds that the evidence preponderates in favor of the following findings of fact.

## FINDINGS OF FACT

1. Plaintiff, at the time of his injury, was an employee of Yaun Welding and Machine Works, Inc., an independent contractor.

2. At the time of the accident the defendant vessel JAMESTOWN was owned and operated by the defendant, Humble Oil and Refining Company.

3. When the JAMESTOWN arrived at the Port of Baton Rouge, she was experiencing difficulty with one of her shaft bearings, and in order to determine the extent of the damage to the bearing, the members of the ship's crew rigged up a chain fall, unbolted the top half, or cap, of the bearing, and raised it a fraction of an inch by means of the chain fall so that the babbitt surface of the bearing cap could be inspected.

4. This inspection revealed that there was some apparent damage to the babbitt surface of the bearing, and rather than have the ship's crew attempt to repair it, Yaun Welding and Machine Works, Inc. was called upon to make the repairs.

5. Yaun sent a crew of four men, including the plaintiff, to the vessel to make the repairs.

6. When the Yaun crew boarded the vessel, the bearing cap, which weighed 500 pounds or more, was safely suspended by the chain fall a fraction of an inch above its normal position on the shaft.

7. In order to remove the bottom half of the bearing from underneath the shaft, it was necessary to lift the weight of the shaft off of the bearing. This would permit the bottom half of the bearing to be rolled out from under the shaft.

8. Prior to attempting to slightly raise the shaft in order to lift its weight off of the bottom half of the bearing, the foreman of Yaun's crew, Mr. Perkins, ordered his men to move the suspended bearing cap away from its position over its normal working site, and to let it down on the shaft, two or three feet forward of its normal position. It was thus moved, by use of the chain fall, and then was lowered by use of the same chain fall and made to rest on the shaft. Either at that time, or some time later, the chain fall was disengaged from the bearing cap and the cap continued to rest on the shaft with no support other than its own weight holding it in its position on top of the shaft.

9. In order to rotate the bottom half of the bearing out from under the shaft it was necessary to exert an upward pressure on the shaft, thus relieving the bottom half of the bearing of the weight which the shaft was exerting upon it. While there is conflict in the evidence on this point, the Court concludes that this was probably done by use of a heavy jack, while the lower half of the bearing was being handled with the help of the chain fall that had previously been used to lift the bearing cap off of the shaft and to place it on top of the shaft at the position it was in just prior to the accident.

10. The lower half of the bearing was removed, and its babbitt surface was worked on, and the crew was in the process of relocating the bottom half of the bearing in its normal working position just prior to the happening of the accident in which the plaintiff was injured.

11. As the lower half of the bearing was being replaced under the shaft, the foreman, Mr. Perkins, instructed the crew to rig up the bridle on the bearing cap which was resting on the shaft so that it could then be lifted by the chain fall and placed on the floor, or deck, so that its bearing surface could be repaired.

12. Pursuant to this order, plaintiff proceeded to attempt to thread the bridle through the eye bolts on the bearing cap, and while attempting to do so, he slipped and fell, and as he fell, the bearing cap rolled over on the shaft and fell off of the shaft, striking plaintiff on the foot, causing him the injuries of which he now complains.

13. There is no credible evidence in the record to lead to the conclusion that the owner, operators, or members of the crew of the JAMESTOWN were guilty of any negligence whatsoever causing or contributing to the cause of this accident.

14. Approximately three hours elapsed between the time Yaun's crew moved the bearing cap from over its working site to its location on the shaft from which it fell to the time when it fell and injured plaintiff.

15. The foreman of the Yaun crew was guilty of negligence when he ordered or permitted the chain fall to be disengaged from the bearing cap and allowed it to rest, unsupported, on top of the shaft, and he was guilty of continuing negligence for allowing it to so remain from the time it was placed there until the accident occurred. He was again guilty of a separate act of negligence when he ordered or permitted plaintiff to rig up the bridle on the bearing cap without making sure that the necessary precautions were taken to see that the bearing cap was made fast during that operation. And plaintiff himself was guilty of negligence at the moment of the accident for failing to take the necessary precautions to see that the bearing cap was held in some manner before he attempted to thread the bridle through the eye bolts.

16. The original act of negligence, i. e., leaving the bearing cap unsupported on the shaft, did not cease when the chain fall was disengaged from the bearing cap, but this act of negligence continued right down to the moment of the accident, and was a proximate cause of the accident itself. The negligence of Yaun's foreman in ordering or permitting the members of his crew, including plaintiff, to work upon the unsecured bearing cap, i. e., to attempt to rig up a bridle thereon without first ascertaining

that it was in a safe position to do so, was an act of negligence occurring at the time of the accident itself and was also a proximate cause of the accident and resulting injuries to plaintiff. And finally, the negligence of the plaintiff himself in attempting to work on the bearing cap when it was in a position that he also knew was unsafe was an act of negligence on his part occurring at the precise moment of the accident which was a proximate cause of the accident and resulting injuries.

17. None of the previously enumerated acts of negligence had come to rest prior to the accident, but instead were all acts of operational negligence on the part of the independent contractor, Yaun, or on the part of persons for whom Yaun was responsible, which continued right down to the moment of the injury, and which, acting together, constituted the proximate cause of this accident.

18. At the time the Yaun crew reported aboard the JAMESTOWN, the vessel was indeed unseaworthy, not because of anything the Yaun crew did, but because of the fact that a shaft bearing had been disengaged from the shaft by the ship's crew, and the top half of the bearing was suspended by a chain fall above the shaft. As the vessel then stood, she was unseaworthy and unable to go to sea, and it was for the purpose of correcting this very unseaworthy condition that the plaintiff and the other members of the Yaun crew were called aboard.

19. The procedure to be used in correcting this unseaworthy condition, that is, in repairing and replacing the bearing in order to make the vessel seaworthy and operable, was entirely within the discretion of and under the control of the Yaun repair crew.

20. The vessel JAMESTOWN was not taken out of navigation for these repairs to be made but remained a vessel in navigation at all times pertinent to this suit.

21. Plaintiff was injured while in the course of correcting the very unseaworthy condition which he was called aboard to correct, and the proximate cause of the accident was the negligent acts committed by him and his co-workers while attempting to correct the unseaworthy condition.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this matter and venue is properly laid in the Eastern District of Louisiana.

2. The Court finds as a matter of law that neither defendant, Humble Oil and Refining Company nor anyone for whose action said defendant is liable, was guilty of any negligence which in any way caused or contributed to the cause of the accident and resulting injuries herein involved.

3. The Court finds as a matter of law that the sole proximate cause of plaintiff's injuries was the concurrent negligence of plaintiff himself and his co-workers, all employees of the independent contractor, Yaun Welding and Machine Company.

4. The Court, having found as a matter of fact that the operational negligence of the plaintiff and his co-workers did not come to rest prior to the accident, and did not, prior to the accident, create an unseaworthy condition. but instead continued down to the very moment of the accident, now finds as a matter of law that the operational negligence of the plaintiff and his co-workers did not render the vessel JAMESTOWN unseaworthy. Antoine v. Lake Charles Stevedores, Inc., et al, supra; Robichaux v. K. McGee Oil Industries, Inc., supra.

5. When a repairman, such as plaintiff, is called aboard a vessel to repair an unseaworthy condition then existing, there is, of course, no warranty of seaworthiness running in his favor with respect to the unseaworthy condition which he is called upon to repair, and if he is injured as a result of the very unseaworthy condition he is attempting to correct, he may not recover for his injuries from the shipowner on the grounds

of unseaworthiness. Pinion v. Mississippi Shipping Company, 156 F.Supp. 652 (ED La.–1957); Bruszewski v. Isthmian S. S. Co., 163 F.2d 720 (CA 3–1947). The Court, having found as a matter of fact, that the vessel was unseaworthy because of a damaged bearing rather than because of any act of negligence on the part of the plaintiff or his co-workers, and that plaintiff was aboard the vessel to help correct this known unseaworthy condition, and that he was injured in the course thereof, now finds, as a matter of law, that in respect to this bearing and the unseaworthiness caused by its defective condition, and with respect to the activities engaged in by the plaintiff and his co-workers to correct this condition, plaintiff was not entitled to a warranty of seaworthiness. Quite the contrary, by virtue of the fact that he was called aboard to repair the bearing in order to make the vessel seaworthy, he was advised of the fact that the unseaworthy condition existed, and after he came aboard, when he saw the bearing first suspended over the shaft and later, with his help, resting on the shaft, he was assured of the existence of the unseaworthy condition. The vessel could not operate until the bearing was repaired and replaced in its working site. Plaintiff was injured while attempting to repair this unseaworthy condition, and cannot now recover because of the very unseaworthy condition which he was attempting to repair.

6. The Court having concluded, as a matter of law, that the negligence which resulted in plaintiff's injury was in no way attributable to defendant Humble, nor to anyone for whom Humble is legally liable, and that plaintiff was not injured as a result of a breach of warranty of seaworthiness, he is not entitled to recover for his injuries from either the vessel ESSO JAMESTOWN or its owner and operator, Humble Oil and Refining Company.

7. Since the Court concludes that the plaintiff's injuries were caused solely and entirely by the negligence of Yaun's employees, and since this negligence constitutes a breach of Yaun's duty to perform its work in a workmanlike manner, the Court finds, as a matter of law, that Humble Oil and Refining Company is entitled to recover from Yaun, pursuant to its third party demand, reasonable attorney fees·and costs·incurred in defense of this suit. Strachan Shipping Company v. Koninklyke Nederlandsche S.M.N.V., 324 F.2d 746 (CA 5–1963); American Export Lines v. Norfolk Shipbuilding and Drydock Corporation, 336 F.2d 525 (CA 4–1964); Damanti v. A/S Inger, 314 F.2d 395 (CA 2–1963).

8. Since the Court finds that Yaun's obligation to reimburse Humble a reasonable amount for attorney fees and costs incurred in defense of this action arises out of a breach of contract rather than out of bodily injury sustained by the plaintiff, the Court further finds as a matter of law that the third party defendant, Maryland Casualty Company, is not obligated under its policy No. 01–690–320 to indemnify Yaun for such attorney fees and costs, and hence, Yaun's third party claim against Maryland Casualty Company must fall.

9. Since the Court finds that the plaintiff is not entitled to recover in this suit, the intervention filed by Maryland Casualty Company for recovery of workmen's compensation benefits previously paid to the plaintiff must, as a matter of law, be dismissed.

10. In the event Humble and Yaun are unable to agree on what is reasonable for attorney fees and costs, the Court will, upon application of either party, hear evidence pertaining thereto.

Judgment will be entered accordingly.